[Civ. No. 13556.   Second Dist., Div. One.   July 29, 1942.]

T. E. NILES, Respondent, v. LOUIS H. RAPOPORT & SONS, INC. (a Corporation) et al., Appellants.

Isaac Pacht, Clore Warne and Pacht, Pelton, Warne, Ross & Bernhard for Appellants.

Charles A. Bank and Harold D. Geffen for Respondent.

WHITE, J.—This litigation arises out of an action commenced by plaintiff to recover for legal services rendered

to defendants by plaintiff's assignor, Harold D. Geffen, an attorney at law. Originally, the complaint contained three causes of action, the first of which charged that within two years prior to the commencement of the action plaintiff's assignor and the defendants "entered into an oral agreement, wherein, for legal services rendered by plaintiff's assignor, defendants agreed to hold a certain promissory note made by one Abe Stern, as payor, to Louis H. Rapoport & Sons, Inc., designated therein as payee, for the benefit of plaintiff's assignor and defendants, and each of them, share and share alike," and further, that it was also then and there agreed that Geffen "should own a one-half interest in said note and the proceeds thereof, and that defendants, and each of them, would hold said note in the name of Louis H. Rapoport & Sons, Inc., in trust for plaintiff's assignor, and that the same is now so held." It was also alleged that the note was executed September 21, 1939, in the sum of $3,050, and that defendants claimed the whole thereof and had collected upon it and refused to account to Attorney Geffen.

The second cause of action was presented upon the theory of an account stated, but as to such claim the trial court held against plaintiff, and we need not concern ourselves therewith on this appeal. The third cause of action was based upon services allegedly rendered by plaintiff's assignor to defendants "within two years last past" of the claimed reasonable value of $5,000.

By their answers the individual defendants denied any liability whatsoever. Defendant corporation by its answer denied all allegations of the first and second causes of action and admitted liability in the amount of $250 on the third or quantum meruit cause of action. Defendant copartnership likewise denied the allegations contained in the first and second causes of action, but admitted liability in the sum of $100 by reason of the allegations contained in the third cause of action. Each defendant, by supplemental answer, set up the bar of the statute of limitations (Code Civ. Proc., § 339) as to the first cause of action.

During the trial the court granted plaintiff, over defendants' objections, leave to file a fourth cause of action by way of amendment to the complaint. In general, the allegations contained therein were that about September, 1931, plaintiff's assignor entered into an oral agreement with defendant corporation under the terms of which he was em-

ployed to collect a certain indebtedness allegedly due from Abe Stern and Mollie Stern, and as compensation therefor he was to be paid fifty per cent of all sums collected upon such obligation; that on September 21, 1939, defendant corporation took possession of a promissory note in the sum of $3,050, executed by Abe and Mollie Stern and payable to such corporation, in liquidation of the aforesaid indebtedness; that said note provided for installment payments, on account of which $1,100 had been paid. It was further alleged that on September 21, 1939, "defendants became involuntary trustees of said above mentioned promissory note, and one-half the proceeds collected and to be collected in the future thereon" for the benefit of plaintiff's assignor. Then followed the allegation that defendants claimed the whole of said note and had converted the proceeds thereof to their own use.

Following trial the court found that the defendants had collected $1,100 on account of what we shall designate as the "Abe Stern note transaction"; that the defendants within two years prior to the commencement of the action agreed to hold such note for the benefit of plaintiff's assignor and defendants, share and share alike; that plaintiff was entitled to one-half the proceeds collected and to be collected thereon and was the beneficial owner of one-half of said note as well as the proceeds received and to be received therefrom; that the defendants were indebted to plaintiff in the sum of $2,200 (this apparently including the $1,100 theretofore found to have been collected on account of the Stern note), and further, that plaintiff was entitled to "one-half of such sum as has been paid to defendants or any of them on the Stern note since the date of trial"; that the reasonable value of the services rendered by plaintiff's assignor to defendants was $2,200, together with one-half of such sum as had been paid on the note by the Sterns since the date of trial and one-half of such sums as might be received or paid on said note in the future.

Upon these findings the court entered judgment against all the defendants and in favor of plaintiff in the sum of $2,200 "and one-half of such further sums as have been paid since the date of trial by Abe Stern and sons to defendants or any of them." The judgment further recited that plaintiff was entitled to receive one-half of all sums that might be paid on said note thereafter and "that defendants and each of them convey to plaintiff by good and

sufficient assignment, one-half interest in said note and the proceeds that may be received therefrom," and "that said note be delivered up to the clerk of the court to be impounded by him, and one-half the proceeds paid over to plaintiff when the same are received."

Upon this appeal defendants are urging a reversal only insofar as the Abe Stern promissory note trust transaction is concerned. As to the items found by the court to be due under plaintiff's third cause of action, which had reference to services rendered by plaintiff's assignor for defendants in connection with transactions other than the Stern promissory note, no question is here raised. Appellants concede that as to the amount due on these items the evidence is in conflict and the trial court's determination of the matter must be final.

Appellants first contend that there is no evidence to sustain and support any findings of a trust relationship, either voluntary or involuntary, between plaintiff's assignor, Attorney Geffen, and his clients, the defendants herein, as to the Abe Stern promissory note transaction. Viewing the evidence in the light most favorable to the findings and the judgment predicated thereon, the record reveals that in 1931 plaintiff's assignor was retained by defendant Harry Rapoport to bring an action against Abe and Mollie Stern to recover a deficiency judgment after foreclosure of a mortgage or trust deed. The original note was for $2,777.65, and the property, consisting of several lots, was sold to the Rapoports at a foreclosure sale for $1,000, leaving a deficiency of $1,778.41. Attorney Geffen filed the action August 12, 1931, and judgment was entered September 4, 1931, for $1,911.92, which amount included attorney's fees of $100. Execution was issued, and was returned wholly unsatisfied on January 12, 1932. Attorney Geffen testified that so far as his fee was concerned, it was agreed that the same would be "fifty per cent of anything recovered" and that this fee arrangement was confirmed by defendants "from time to time." Attorney Geffen testified that defendant Harry Rapoport continually urged him to attempt to collect the judgment; that he advised Rapoport not to be too insistent, because there was some question as to the validity of the judgment by reason of the fact that Mr. Stern had been discharged in bankruptcy after his debt to the Rapoports had been incurred, and that the latter's claim was listed in the schedule in bankruptcy. In his testimony Attorney

Geffen then detailed the plans he unfolded to defendant Harry Rapoport looking toward the collection of the judgment. Finally, according to the witness, appellants secured a financial statement of the Sterns' business, which disclosed possession by them of certain assets. This occurred in July or August, 1939, and thereupon Attorney Geffen caused execution to be issued and levy made upon the Sterns' business. This action resulted in a meeting at which, according to Mr. Geffen's testimony, through his efforts a settlement was reached. The terms of the settlement called for the execution of a note by Abe Stern, Mollie Stern and their sons, to defendants herein, in the sum of $3,050, representing the amount of principal on the judgment plus accumulated interest since 1931. According to Attorney Geffen's testimony, he and defendant Harry Rapoport agreed that it would be sufficient to designate Louis H. Rapoport & Sons, Inc., as payee on the last-mentioned note and that Mr. Geffen was to be paid one-half of the monthly amortized payments provided for in the note.

With reference to the existence of a trust agreement as to the Abe Stern note, plaintiff's assignor testified: "I told Harry to take the note in the name of his company as payee, and that he did not have to name me as one of the payees, but that he could send me one-half monthly as collected. He said that was all right. I then said that inasmuch as there was nothing more to do but sign a form of bank note I would leave. He said that he would show me the note when it was executed. Louis Rapoport left with me in my car. As we were going to the office he asked me if $25 would be all right for my services in making the settlement. I told him that Harry and I had an agreement that I was to re ceive fifty per cent of whatever we received. He said that I would then have to take the matter up with Harry."

Much of the foregoing testimony was denied or contradicted by the appellants, but it was for the trial court to determine the value and effect of all the evidence introduced, as well as the credibility of the respective witnesses. We are persuaded that the foregoing evidence is of sufficient substantiality to warrant the finding and conclusion by the trial court that defendants became voluntary, and as well, involuntary trustees for plaintiff's assignor, and in such capacity were required to hold in trust for plaintiff's assignor the Stern promissory note in the sum of $3,050 dated

December 21, 1939. Once a fact is proved, an inference may be drawn therefrom when, among other things, a consideration of the course of business warrants such deduction. (Code Civ. Proc., § 1960.) Viewing the foregoing evidence in the light of business practice and the usual propensities of people, we are impressed that the court was justified in concluding that plaintiff's assignor owned a one-half interest in the note in question as well as the payments made thereunder, and that defendants voluntarily accepted a confidence reposed in them by plaintiff's assignor to hold the note in trust to secure to him the payment of his one-half interest therein. (Civil Code, sec. 2216.)

Section 2223 of the Civil Code, reads, "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner," while section 2224 of the same code provides in part that one who gains a thing through the violation of a trust or other wrongful act, unless he has some other or better right thereto, is an involuntary trustee of the thing gained for the benefit of the person who would otherwise have it. When, therefore, the court upon competent evidence found that after obtaining the note and certain payments made thereon, appellants denied that respondent's assignor had any interest therein and wrongfully detained the note and proceeds received therefrom, a finding that an involuntary or constructive trust was created in favor of respondent's assignor was justified, because there were present in the transaction between the parties those conditions stated in the last mentioned code section, and that is all that is necessary to warrant the establishment of an involuntary trust. (*Lauricella* v. *Lauricella*, 161 Cal. 61 [118 Pac. 430].)

■ We are not unmindful of the rule that in construing oral contracts between attorney and client concerning compensation, there may be circumstances where the contract is to be construed most favorably to the interests of the client by reason of the confidential relationship which exists, but these circumstances are present only when there is some ambiguity as to the intent of the parties. (3 Cal. Jur. 686.) In the instant case we cannot say that the arrangement between the parties herein was tainted with ambiguity or uncertainty.

■ Appellants' contention that the court failed to make any findings on the issue of the statute of limitations cannot be sustained. There is abundant evidence in the record to indicate that the original agreement for the payment of fifty per

cent of the recovery on the Stern litigation was made by defendants in 1931 and by them confirmed "from time to time." There is also evidence that plaintiff's assignor continued to work on the matter of collecting this account up to and beyond the time that the note was made on September 21, 1939. The statute of limitations does not begin to run from the time of making a contract, but commences from the time the cause of action accrues. (Code Civ. Proc., § 312; *Wheatley* v. *San Pedro etc. R. R. Co.*, 169 Cal. 505 [147 Pac. 135].) The statute commences as of the date of breach of the obligation. (*Baker* v. *Joseph*, 16 Cal. 173.) In the instant case, the breach occurred at the time appellants took possession of the note and proceeds and failed or refused to pay Attorney Geffen his one-half interest therein. Where, as here, the court found that plaintiff's assignor was entitled to a portion of the note and proceeds, it thereby necessarily found that respondent's claim was not barred by the statute of limitations. ■ From what we have herein said it is at once apparent that if more complete findings had been made on the issue of the bar of the statute of limitations, they would have been adverse to the contentions of appellants. That being so, the failure of the court to find further than it did is not a ground for setting aside the judgment. (*Hulen* v. *Stuart*, 191 Cal. 562, 572 [217 Pac. 750] ; *County of Los Angeles* v. *Industrial Acc. Comm.*, 13 Cal. App. (2d) 69, 78 [56 P. (2d) 577].)

■ Appellants next contend that the judgment is uncertain, and by reason of such uncertainty, invalid. As we read the judgment, it clearly and without ambiguity orders that plaintiff recover of and from the defendants the sum of $2,200 and one-half the sums received by defendants on the Stern note since the trial date. This latter portion of the judgment was warranted because a period of some ninety days elapsed from the date of trial to the date of judgment, during which time amortized payments became due on the note, and under the judgment plaintiff owned one-half of such payments. The judgment then determines that plaintiff is entitled to receive one-half of such sums as may be paid in the future upon the Stern note, and then directs defendants to convey to plaintiff, by good and sufficient assignment, a one-half interest in the note and the proceeds that may be received therefrom. We are in accord with appellants' claim that the portion of the judgment requiring that the note be delivered to the clerk of the court, to be impounded by him and one-half the proceeds

paid over to plaintiff as the same are received, should be stricken therefrom. This for the reason that there is no authority in law for the clerk of the court, on behalf of private parties, to receive payments due under the note and transmit the same in proper proportions to such parties, and in the event payments were not made there is no authority vested in the clerk by and through which he could enforce collection of the installments due from time to time.

■ We cannot see where appellants were prejudiced by the court's finding as to the Stern note transaction on the *quantum meruit* count of the complaint. There was ample evidence to support the court's finding as to the reasonableness of the recovery, both on a *quantum meruit* basis and upon the express agreement made by the parties. Appellants assert that the effect of this is to permit plaintiff to recover on asserted inconsistent theories of express and implied contract. Where, as here, there is in the record evidence to support a recovery on either theory, the findings on the inconsistent theory may be disregarded as surplusage. (*Baird* v. *Ocequeda*, 8 Cal. (2d) 700 [67 P. (2d) 1055].) In the instant case the amount of the judgment, based upon either theory, was the same; that is to say, the court found that plaintiff was entitled to a specific sum, the amount of which was determined to be the same upon both a *quantum meruit* basis and an express agreement basis. Therefore appellants suffered no injury.

■ Appellants finally urge that even though respondent is entitled to fifty per cent of the recovery made on the Stern indebtedness, this should be what they denominate a "net recovery." In this connection it appears that prior to 1939 Abe Stern and Mollie Stern owned certain lots which they hypothecated to secure the indebtedness to appellants represented by a promissory note. When the Sterns defaulted in the payment of their obligation under this note appellants foreclosed on the security and caused the same to be sold at a trustee's sale. There being no bidders, appellants bought the lots in themselves, and as heretofore pointed out later retained plaintiff's assignor to file suit for recovery of a deficiency judgment. It is this deficiency judgment that was settled by execution of the promissory note hereinbefore discussed in the sum of $3,050. Appellants contend that when they acquired title to the lots they were required to pay various taxes, assessments and other expenses from 1931 to the date of trial, and that at the time the agreement to execute the Stern note of $3,050 was made it was agreed that appellants

would reconvey the aforesaid real property to the Sterns upon payment by the latter to appellants of certain taxes and other expenses incurred in connection with the real property after appellants had bid it in at the trustee's sale. It is appellants' claim that the real property should be considered in connection with appellants' responsibility to plaintiff's assignor for fees in making the Stern settlement. We are not in accord with this claim, because it clearly appears that the understanding with regard to the transfer of the lots from appellants back to the Sterns was no part of the settlement of the deficiency judgment out of which this litigation grows. Plaintiff's assignor was therefore not concerned therewith, because the obligation of appellants to the Sterns did not in any way affect the appellants' obligation under the $3,050 note out of which the court found the fee of plaintiff's assignor was to be paid. The agreement between appellants and Abe Stern and sons by which the former were to reconvey under certain terms and conditions the lots in question was separate and apart from and had nothing whatever to do with the deficiency judgment transaction that resulted in the execution of the $3,050 note.

For the foregoing reasons, the judgment is modified by striking therefrom that portion which directs "that said note be delivered up to the clerk of the court to be impounded by him, and one-half the proceeds paid over to plaintiff when the same are received.".As so modified, the judgment is affirmed, respondent to recover costs on appeal.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied August 24, 1942.