[Civ. No. 17744. First Dist., Div. One. June 11, 1958.]

MARTIN J. O'MALLEY, Respondent, v. E. J. GRIFFITH AND COMPANY, INC. (a Corporation), Appellant.

244

Slack & Zook and John E. Troxel for Appellant.

Arthur N. Ziegler, Allan L. Sapiro and O'Malley & Colthurst for Respondent.

BRAY, J.—Defendant appeals from a judgment in favor of plaintiff in the sum of $11,331.56.[1]

### QUESTION PRESENTED

Does the evidence support the court's finding that there was no account stated by the letter of October 8, 1952?

Defendant also contends that the court's findings and judgment were inconsistent in that the court found that the $11,331.56 for which it gave judgment was due both for breach of contract and on an account stated. Inasmuch as defendant does not contend that the evidence does not support both theories (except as to whether said amount was paid) we deem it unnecessary to determine whether or not there was such inconsistency or to further discuss this contention.[2]

### WAS THERE A SECOND ACCOUNT STATED?

This action grew out of a written contract entered into about June 1, 1952, wherein Micronesia Metal and Equipment Company, Inc. (plaintiff's assignor and herein referred to as "Micro") agreed to sell and E. J. Griffith and Company, Inc. (herein referred to as "Griffco") to buy a shipload of steel and iron scraps. Ninety per cent of the declared value was to be paid upon shipment and the balance to be ascertained

---

[1]The judgment originally provided that it was to bear interest at 6 per cent per annum. A *nunc pro tunc* order was made amending the interest to 7 per cent. No complaint is made of this correction.

[2]"Where, as here, there is in the record evidence to support a recovery on either theory, the findings on the inconsistent theory may be disregarded as surplusage." (*Niles* v. *Louis H. Rapoport & Sons*, 53 Cal. App.2d 644, 652 [128 P.2d 50]; *Baird* v. *Ocequeda*, 8 Cal.2d 700, 703 [67 P.2d 1055]; *Crogan* v. *Metz*, 47 Cal.2d 398, 403 [303 P.2d 1029].)

in Japan after arrival of the ship there. Concededly the scrap was delivered, the actual cost determined to be $184,-654.67, of which 90 per cent or $171,936 was paid as agreed and a balance of $11,331.56 left. Defendant contends that on October 8, 1952, an account was stated showing that of this latter amount all was paid except $831.10 which defendant offers to pay. The circumstances of this so-called second account stated follow: There had been a statement of account dated August 7, 1952, sent by Micro to Griffco showing the $11,331.56 balance. November 12, 1952, Griffco's vice president in Tokyo wrote to Griffco's general offices in Portland, Oregon, stating that Griffco still owed Micro $11,-331.10. In June or July, 1955, Griffco was purchased by Getz Bros. At the trial no general ledgers or books of account reflecting the scrap transaction were produced. Getz Bros. had endeavored to get defendant's records from its Tokyo office where they had been kept, but were unsuccessful. However, three annual audits of defendant were produced. The 1952 audit contained a figure of $17,000, itemized under "Scrap Contract Expenses Reserve." The 1953 audit contained a figure of $11,331.10 as "reserve for scrap contract expenses." The 1954 audit contained no similar figure. Nor was there any such item on the balance sheet of Griffco when Getz Bros. purchased the company. Defendant produced a letter dated October 8, 1952, written on a Micro letterhead addressed to Griffco and signed "Micronesia Metal & Equipment Co., Inc., Jack Gotthold, Manager,"[3] stating: "We assume that you know that this Corporation has been purchased by new owners and the undersigned has been appointed Manager of the operations in the Mariana Islands and the Palau Islands. Upon perusal of our files, we find that there is a statement of account with you for the amount of $11,-331.10. On the other hand, Mr. Bruce Aitchison, the General Manager of this Corporation, informed us that we owe you, as a finder's fee, the amount of $10,500. In consideration of this we ask you to kindly remit to us the balance of $831.10, for which we thank you." This letter was found in Griffco's files. There was no record of its having been answered or acted upon. The Aitchison mentioned in the letter was general manager of Micro from August or September of 1952, and for a while was a minority stockholder therein. By the

[3]Gotthold died before the trial and hence his testimony could not be obtained.

time of the trial he owned 90 per cent of its stock and was its president. At the time of the execution of the contract Aitchison was a shareholder in Griffco. He and its president, Griffith, had discovered the scrap. Aitchison testified that he advised Griffith that no profit should be taken on the resale of the scrap. Instead a profit would be taken from the "demurrage or dispatch, and in shipping, stevedoring, and such." He also advised Griffith where he might sell the scrap.

Aitchison further testified that after the contract was entered into he obtained for Griffith an option to buy Micro. He and Griffith were going to buy it together. When Griffith was unable to obtain the necessary money Aitchison told Griffith that certain people were willing to take up the option (not telling him that he, Aitchison, was one of the people). Griffith told him to make any deal he could. Aitchison then asked his people "what was a fair finder's fee to Griffith and myself for having found this business, and brought it to their doorstep." He was referring to a fee to be paid by "his people" who purchased Micro. They said 2 per cent, or $20,000. Aitchison then advised Griffith that that sum would be divided, $10,500 to Griffith and $9,500 to Aitchison. This was in Tokyo long after the scrap transaction had been completed. Griffith did not agree. Litigation followed between the two men. The litigation was settled. The details of the settlement are not clear. Apparently Griffco owed Aitchison for moneys loaned. Aitchison paid Griffco $50,000 for a general release of all claims from both Griffith and Griffco. Griffco then paid back Aitchison the $50,000 and later paid him an additional $26,000.

According to Aitchison, Gotthold had been employed and paid initially by a New York company owned by Aitchison's associates in the purchase of Micro. Gotthold was paid by Micro for only one month before his death. He never had any title from the corporation and was sent out by Aitchison's associates to watch Aitchison. However, Gotthold was employed by Micro as the man in charge of production of scrap in a certain area. He had no authority to make agreements. Aitchison testified that he never told Gotthold that Micro owed Griffith $10,500. That was a sum owed personally to Griffith by Aitchison and paid for in the $50,000 compromise.

Under Aitchison's testimony the $10,500 mentioned in the Gotthold letter was never owed to Griffco by Micro and

Gotthold had no authority to write the letter. That amount was a personal transaction between Aitchison and Griffith and the amount was paid. Griffith did not testify. While there were some inconsistencies in Aitchison's testimony, that and his credibility were matters for the trial court to pass upon. We cannot say as a matter of law, as we would be required to do in order to reverse the judgment, that Aitchison's testimony is false. Defendant relies on the Gotthold letter as being an account stated and as showing that Griffco's indebtedness to Micro was paid except for $831.10. However, notwithstanding this letter, Griffco's vice president in Tokyo in an interoffice communication admitted Griffco's indebtedness to Micro. This would indicate that Griffco did not consider the Gotthold letter to be an account stated. In Griffco's files there is a letter to it from Micro dated March 4, 1953, dealing with claims arising out of the voyage of the ship upon which the scrap was shipped, which states that Griffco still owes Micro "a considerable sum of money arising out of the cargo shipped aboard" that ship. Under the circumstances of this case, the Gotthold letter did not constitute an account stated, nor an admission of the truth of its contents.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.