**INTERMEDICS, INC., a Texas corporation, Plaintiff,**

v.

**VENTRITEX, INC., a California corporation; Michael Sweeney, an individual; and Benjamin Pless, an individual, Defendants.**

No. C 90 20233 JW (WDB).

United States District Court, N.D. California.

May 10, 1991.

As Amended Sept. 13, 1991.

---

Robert E. Lyon, Jeffrey M. Olson, Hope E. Melville and Lyon & Lyon, Los Angeles, Cal., for plaintiff.

Denis R. Salmon, Madison C. Jellins and Brobeck, Phleger & Harrison, Palo Alto, Cal., and George H. Gerstman and Gerstman & Ellis, Chicago, Ill., for defendants.

## ORDER AND OPINION RE DEFENDANTS' MOTION TO DISMISS COUNTS X–XIX OF PLAINTIFF'S AMENDED COMPLAINT

WAYNE D. BRAZIL, United States Magistrate Judge.

### I. Introduction.

The plaintiff in this action, Intermedics Inc., (Intermedics), develops and markets complex devices for treating malfunctions of the heart. The corporate defendant, Ventritex Company Inc. (Ventritex) is a competitor of Intermedics. The individual defendants are ex-employees of Intermedics who presently work for Ventritex.

Both companies are in the process of developing devices known as implantable defibrillators.[1] Plaintiff's complaint, filed on April 23, 1990, includes counts for infringement of seven patents assigned to Intermedics regarding an implantable defibrillator (counts I–VII), declaratory relief (counts VIII–IX), misappropriation of trade

---

1. An implantable defibrillator is a complicated device used to treat two kinds of pulmonary malfunctions, ventricular fibrillation and ventricular tachycardia.

secrets and confidential and proprietary information (counts X–XI), breach of and inducement to breach fiduciary and contractual obligations (counts XII, XIII, XV and XVI), unfair competition (count XIV), and conspiracy (count XVII).

On February 21, 1991, Intermedics filed a first amended complaint. The amended complaint added an independent basis for the court's jurisdiction over the state counts (diversity) and added a new federal count (correction of inventorship on U.S. Patent No. 4,827,936) and one new state count (constructive trust). The case was originally assigned to Judge Ware, but the parties have subsequently consented to the undersigned's jurisdiction over this matter.

Counts X–XIX of plaintiff's first amended complaint, the counts which are the subject of this motion to dismiss, allege misappropriation of plaintiff's trade secrets, breach of contract and fiduciary duty, conspiracy, unfair competition, constructive trust, and correction of inventorship. Having considered the parties' written and oral submissions, the court hereby ORDERS the following:

## II. Characterization of the Motion.

A threshold question we face is whether to consider defendants' motions under the standards emanating from Rule 12(b)(6) or those emanating from Rule 56. Defendants' formally presented their motion as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, a motion for a more definite statement under Federal Rule of Civil Procedure 12(e). F.R.C.P. 12(b) provides that if, on a motion under 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as a motion for summary judgment under F.R.C.P. 56. *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986).

Defendants' motion does refer to matters outside the pleadings. Defendants' papers ask the court to draw a number of inferences from the entry of a dismissal, with prejudice, by the plaintiff in a prior action between these same parties. To that end, the defendants and the plaintiff requested that the court take judicial notice of plaintiff's prior complaint (filed in 1985), plaintiff's earlier application for a preliminary injunction, (filed in 1985), a stipulation entered by the parties whereby the parties agreed to participate in an informal audit as a possible alternative to litigation, and the dismissal entered in the 1985 action.

■ As a general proposition, a court may take judicial notice of facts outside the pleadings without converting the motion into one for summary judgment only when the facts are properly the object of "strict" notice. *Id.; Schwartz v. Commonwealth Land Title Insurance Co.*, 374 F.Supp. 564 (E.D.Pa.1974). Facts properly held the object of judicial notice in the context of a motion to dismiss under 12(b)(6) include, among others, records and reports of administrative bodies, *Interstate Natural Gas Co., v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir.1953), items in the record of the case or matters of general public record, *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C.Cir.1979), and copies of a document (i.e. a contract) attached to the complaint as an exhibit. *Case v. State Farm Mutual Automobile Insurance Company*, 294 F.2d 676 (5th Cir.1961).

Given the authorities just cited, it is arguable that the court could take judicial notice of all of the facts presented by defendants without converting their motion into a motion for summary judgment. The complaint filed by the plaintiff against the defendants in 1985, the application for a preliminary injunction, the stipulation to participate in the informal audit, and the order entering the dismissal of the 1985 action, are all matters of public record.

The difficulty is that in arguing their respective positions the parties also make frequent references to facts not contained within the documents described above. For example, counsel have directed our attention to letters related to the ADR/audit process, and have made proffers about the character of that undertaking. These references to materials beyond the pleadings

would justify our treatment of defendants' motion as a motion for summary judgment.

After working through the substance of the parties' arguments and supporting materials, however, this issue has taken on something of an academic cast. For reasons that we make clear below, we conclude that defendants' motion (with one exception, which we specify *infra*) fails under *either* the standards emanating from Rule 12 or those emanating from Rule 56. Thus, we deny defendants' motion (except in one part) under both rules.

■ We also note that, as required by the Ninth Circuit, the parties were fairly appraised that the court would look beyond the pleadings when deciding this motion. See, *Grove v. Mead School Dist.*, 753 F.2d 1528, 1532 (9th Cir.1985).

At the status conference at which the briefing schedule for this motion was established, counsel for the plaintiff urged the court to recognize that this, and other motions to dismiss filed by the defendants, were really motions for summary judgment. Counsel for the defendants did not dispute this characterization of the pending motions. Moreover, both parties have submitted material outside of the pleadings in their briefs on this matter. "A represented party who submits matters outside the pleadings to the judge and invites consideration of them has notice that the judge may use them to decide a motion originally noted as motion to dismiss ..." *Id.*

## III. Defendants' Res Judicata Attack on the State Law Claims.

Defendants argue that a 1985 action between these parties, dismissed with prejudice, has the effect of precluding all of plaintiff's current state court claims.

In 1985, after individual defendants Sweeny and Pless left Intermedics to join in the start up of Ventritex, plaintiff sued defendants over defendants' plans to create a new implantable defibrillator. The 1985 complaint included counts for misappropriation of Intermedics' trade secrets, breaches of contractual and fiduciary duties, and a variety of other allegedly unfair business practices. Defendants responded to the suit by filing their own complaint for declaratory relief.

After removal of the case to Federal court and transfer of venue to California, the parties agreed to participate in an alternative dispute resolution procedure whereby a third party would conduct an informal review (the audit) of Ventritex's documents to determine whether the individual defendants had misappropriated Intermedics' trade secrets. The parties stipulated that the results of the audit would not be disclosed in that or any related action (the auditor was directed to destroy all of his notes if a dismissal of the action was entered) and that the purpose of the audit procedure was to enable Intermedics to assess the strength of the trade secrets aspect of the pending, 1985, action. The parties also stipulated that the audit results were "expressly not intended to be used, directly or indirectly, by any party hereto or third party in this or any related action."

After the audit procedure was completed, plaintiff agreed to dismiss the 1985 action against defendants, with prejudice, "as to any and all claims asserted or threatened up to the date of the dismissal." Defendants also agreed to dismiss their declaratory relief action.

■ Res judicata (claim preclusion) will bar a subsequent suit on the same ground of recovery when (1) the parties are identical, (2) the prior judgment was rendered by a court of competent jurisdiction, (3) the judgment was a final judgment on the merits, and (4) both suits are based on the same cause of action. *Adolph Coors Co. v. Sickler*, 608 F.Supp. 1417, 1429 (C.D.Cal. 1985).

■ There is no dispute that the parties to this action are identical to the parties in the 1985 action. Nor is there any dispute that the entry of dismissal in the prior case was rendered by a court of competent jurisdiction. Moreover, a voluntary dismissal, with prejudice, entered by stipulation of the parties, is considered a final judgment on the merits for purposes of res judicata.

*Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1438–39 (9th Cir.1985).

■ In determining the final question, whether two suits are based on the same cause of action, California courts follow the "primary rights" theory, under which each invasion of a different primary right gives rise to a separate cause of action. *Id.* at 1438; *C.D. Anderson & Co. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir.1987).

In determining whether different primary rights have been invaded, California courts consider, among other things, whether both suits arise from a common nucleus of operative facts. *Id.* To avoid the bar of res judicata, plaintiff asserts that the facts which give rise to its non-federal causes of action apparently did not exist prior to the time the earlier law suit was dismissed with prejudice. It is plaintiff's contention that the defendants apparently first began committing the acts which caused the harm to plaintiff sometime after that dismissal, probably in late 1986 and 1987. The 1985 audit disclosed no such acts. That is why plaintiff agreed to the dismissal of that action. When plaintiff agreed to that dismissal, it concluded that none of its primary rights had yet been invaded.

We must bear in mind that the essential right in issue here is *not* freedom from having defendants *know/possess* plaintiff's trade secrets. Rather, the essential primary right is freedom from having defendants *misuse* those trade secrets. That primary right was not invaded prior to the dismissal of the first suit. According to plaintiff, that primary right was first invaded sometime thereafter, by acts of misuse that began occurring sometime in late 1986 or 1987. Since the only alleged acts that serve as a basis for the claims here pressed by plaintiff (that constituted invasions of plaintiff's rights) occurred after the dismissal of the first case, there are no *actionable* acts or facts which the two suits have in common. Thus, it makes no sense to say that the two *suits* arise out of a common nucleus of operative facts.

In sum, we find plaintiff's argument persuasive that res judicata cannot bar a claim based on conduct that occurred after the dismissal of the 1985 action. It is well settled that res judicata cannot extinguish claims which did not even exist and which could not possibly have been sued upon in the previous case. *Eichman*, 759 F.2d at 1438.

Thus, we hereby DENY defendants' motion to dismiss counts X–XIX of the amended complaint on grounds of res judicata EXCEPT TO THE FOLLOWING LIMITED EXTENT: plaintiff shall not be permitted to press here claims based on alleged acts of *misuse* of its confidential, proprietary information that occurred before entry of the order dismissing the earlier action with prejudice (April 10, 1986).

■ Plaintiff seeks to avoid even this limited impact of res judicata by suggesting that defendants might have secured the 1985 dismissal with prejudice through acts of fraudulent concealment. Specifically, plaintiff speculates that the audit procedure may have been tainted by fraud.

Fraud by a party will not undermine the conclusiveness of a judgment unless the fraud was *extrinsic*, i.e., it deprived the opposing party of the opportunity to appear and present his case. *Eichman v. Fotomat Corp.*, 147 Cal.App.3d 1170, 1175, 197 Cal.Rptr. 612 (1983). The suppression of evidence in an adversary proceeding is *intrinsic* fraud, *Id.* at 1176, 197 Cal.Rptr. 612, and cannot be raised at a later date as the basis for overturning an otherwise valid judgment. It is at least arguable, however, that suppression of evidence in the audit could amount to extrinsic fraud because the purpose of the wholly voluntary, out-of-court, extra-judicial audit was to equip plaintiff to determine *whether* to press forward with the litigation (rather than *how* to proceed, or to provide evidence for use in court). In fact, the parties had agreed that none of the information developed in the audit process could be used as evidence in the formal litigation. Thus, an argument could be made that the fraud, if proven, occurred outside formal litigation and had the effect of depriving plaintiff of the opportunity to present his case. On the other hand, this ADR procedure obviously

was launched only because of and only in connection with formal litigation, and was in some ways analogous to a discovery proceeding whose purpose is to determine whether evidence of certain wrongdoing exists. Of course, the stipulation that the information developed by the auditor could not be used as evidence in the litigation significantly distinguished the audit procedure from normal discovery processes. In sum, whether this audit procedure should be deemed extrinsic or intrinsic for purposes of res judicata is a close question with potentially enormous implications for ADR processes generally. For reasons set forth below, we elect not to answer this question in this setting.

We begin by pointing out that plaintiff has not presented, at this time, any evidence whatsoever that defendants in fact engaged in any fraudulent activity in connection with the audit procedure. Thus, even after years of interest and inquiry, plaintiff's suggestion that the audit might have been vitiated by fraud remains wholly speculative. In this connection, it is important to emphasize that the auditor was a former employee of plaintiff's (see, Stipulation Staying Discovery and Establishing Terms of Informal Audit, filed March 5, 1986, at Defendants' exhibit C.), who presumably had both the knowledge and incentives to do a thorough job searching for any possible clues suggesting misuse of plaintiff's proprietary material and who presumably appreciated the possibility that fraud by defendants might compromise his work. Thus equipped with knowledge, incentives and sensitivity to the possibility of being misled, the auditor was not likely to have been victimized by fraud. Apparently plaintiff shared this view, because after he completed his work plaintiff *voluntarily* elected to dismiss the case with prejudice.

It also is significant that it would be extremely difficult, if not impossible, for plaintiff to prove that defendants engaged in fraud in connection with the 1985 audit. The most obvious source of that difficulty is the agreement, freely and voluntarily entered by the parties in 1985, that the information developed during the audit would be sealed forever and could not be used in any subsequent litigation. That agreement required the auditor (in the event the case was dismissed) to destroy his notes from the audit and would prohibit him from testifying about the procedure or his findings. Given these terms, plaintiff could attempt to prove that fraud occurred in connection with the audit only through circumstantial evidence, e.g., by proving from other sources that defendants had in fact *misused* plaintiff's proprietary information before the audit was completed *and* that the auditor could have failed to detect that misuse only as a result of intentional deception of him by defendants (rather than as a result, for example, of oversight or simple error by the auditor). Under all the circumstances, we find it difficult to imagine that plaintiff could mount such proof.

Finally, and as important as the other considerations that affect this decision, plaintiff has failed to show how the relief to which it would be entitled would be any different even if it could prove that defendants began misusing proprietary information before April 10, 1986. If there has been any commercially meaningful misuse of plaintiff's proprietary information by these defendants, such misuse would necessarily be continued into the present (by legal hypothesis, defendants' products would be infected with that misused information). The equitable relief to which plaintiff would be entitled if defendants' products are so infected would not vary with the date on which the infection was contacted. Similarly, it is difficult to see how, realistically, a showing that misuse of plaintiff's secrets before April 10, 1986 could increase any damages to which plaintiffs might be entitled. Plaintiff has made no suggestion that defendants made any sales of products (contaminated by plaintiff's secrets) before April 10, 1986.

Since plaintiff has not shown that proof of misuse prior to April 10, 1986 would have any effect on the relief to which plaintiff might be entitled, since it is unlikely that plaintiff could prove that defendants intentionally deceived the auditor and since mounting such a proof effort would be

extremely difficult and expensive, and since it is not at all clear that such deception would constitute "extrinsic" fraud anyway, we hereby ORDER that plaintiff shall not be permitted to pursue claims based on possible acts of misuse of its secrets prior to April 10, 1986. To that limited extent, defendant's motion to dismiss is granted. We add that we are open to revisiting this ruling if at some juncture later in the pretrial period plaintiff comes forward with significant evidence tending to show both that acts of misuse occurred before April 10, 1986 and that active fraud by defendants caused the auditor not to detect those acts.

## IV. Defendants' Statute of Limitations Attacks on the State Law Claims.

Defendants assert that plaintiff's state law claims for misappropriation of trade secrets, breach of contract, and breach of fiduciary duty (counts X–XVII and XIX) are barred by the applicable statutes of limitation. Defendants assert that the relevant statutes of limitations provide two, separate, grounds for attacking the sufficiency of plaintiff's amended complaint.

First, defendants claim that plaintiff's pleading is fatally insufficient because it fails to state facts, relevant to a statute of limitations inquiry, about when the alleged wrongful acts occurred or when the applicable statutes of limitations were tolled.

We will consider the issue of whether plaintiff must plead facts about when the alleged wrongful acts occurred shortly. However, defendants' related assertion that plaintiff must plead facts sufficient to support a finding that the applicable statutes of limitations were *tolled* is premature. Because we have not yet made any findings regarding the timeliness of plaintiff's state law claims, plaintiff has not yet incurred any obligation to plead tolling facts.

Defendants second statute of limitation based attack is more substantial. Defendants claim that the pleadings from the 1985 suit between these parties demonstrate that plaintiff had sufficient knowledge of the defendants' allegedly wrongful acts to trigger the running of the applicable statutes of limitations.

Counts X & XI allege causes of action for misappropriation of trade secrets under California and Texas law. Because the court must apply the statute of limitations of the forum state, California law controls this aspect of defendants' motion. *M & T Chemicals, Inc., v. International Business Machines Corp.*, 403 F.Supp. 1145, 1147 (S.D.N.Y.1975).

California adopted the Uniform Trade Secrets Act by enacting California Civil Code § 3426.6. § 3426.6 states that "an action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."

Thus, our inquiry is straightforward: do the pleadings and other submissions on which defendants rely show that plaintiff discovered or reasonably should have discovered the misappropriation alleged in counts X and XI before April 23, 1987? (plaintiff's complaint was first filed on April 23, 1990).

We believe that defendants have failed to carry their burden on this point. As the discussion in the preceding section makes clear, it obviously is quite possible that the *acts* of *misappropriation* (*misuse*) that support the state law claims pressed here by plaintiff occurred well after the first lawsuit between these parties was dismissed. Stripped to its essentials, the 1985 suit alleged that defendants *had knowledge of* plaintiff's secrets and that defendants could not develop and produce the product that they apparently intended to develop and produce without using (and, therefore, misusing) plaintiff's secrets. As we already have noted, *these defendants committed no wrong simply by having knowledge of plaintiff's secrets.* As it turned out, plaintiff was unable to detect (through the auditor) any actual *misuse* by defendants of plaintiff's secrets prior to agreeing to the dismissal of the 1985 suit. Plaintiff now contends that it is likely that the acts of misuse by defendants probably began occurring in late 1986 or in 1987.

But plaintiff also insists that it did not discover that misuse had occurred until 1989, when defendants published certain information about their defibrillator. There is nothing inherently implausible about these contentions, and defendants have failed to show that plaintiff either knew in fact about alleged misuse before April 23, 1987 or should have known about it by then. Defendants have not shown that information was available to plaintiff before that date, or any time before 1989, that should have enabled plaintiff to perceive that defendants had committed the acts that allegedly constitute misuse of plaintiff's secrets. Plaintiffs have not shown that the information about their product that became available in 1989 was available to plaintiff prior thereto. Absent some showing to the contrary, we assume that defendants kept as secret as they could the core information about their product. In the ferociously competitive and self-consciously secretive world in which these parties operate, we see no reason to assume that plaintiff in fact had access to significant information about defendants' product before defendants made that information public in 1989. While plaintiff obviously was suspicious about what defendants were doing, plaintiff had been unable to confirm that suspicion during the audit process in 1986. And while plaintiff believed that defendants would be compelled to use plaintiff's secrets to accomplish the product goals defendants had set, plaintiff was not in a position to eliminate the possibility that defendants could achieve their ends in some other way. Nor could plaintiff rule out the possibility that defendants might change their objectives. We cannot apply statute of limitations law in a way that pressures litigants to file suits based merely on suspicions and fears. At least in the commercial setting at issue here, suspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11. Given all these considerations, it would be fundamentally unfair to penalize plaintiff (by using the statute of limitations to bar this action) for not filing its state law claims before it had access to enough information to make them meaningfully colorable.

We note, however, that it wasn't until briefing these motions that plaintiff first made clear its position that it did not discover defendants' alleged misuse of plaintiff's secrets, and could not have made that discovery, until 1989. Given the requirements of F.R.C.P. 9(f), the importance of this issue, the resources defendants have devoted to this motion, and the fact that information necessary to take a position on this matter obviously is within plaintiff's control, we see no reason not to require plaintiff, by *May 20, 1991*, to file a second amended complaint that shall include a specific contention about when plaintiff first discovered the alleged wrongs of defendants. That pleading also shall contain an averment about when plaintiff reasonably should have discovered the relevant alleged wrongs.

Count XII purports to states a cause of action for breach of oral, written, and implied-in-fact contracts against individual defendants Sweeny and Pless. Count XIII alleges breach of a fiduciary relationship.

■■■■ It is well settled that a cause of action for breach of a fiduciary relationship does not accrue until plaintiff discovers or should have discovered all facts essential to his cause of action. *April Enterprises, Inc. v. KTTV,* 147 Cal.App.3d 805, 827, 195 Cal.Rptr. 421 (1983). "Such a relationship compels a rule of delayed accrual to avoid barring a victim of wrongful conduct from asserting a cause of action before he could have reasonably discovered its existence." *Id.*

■■■■ A cause of action for breach of contact, on the other hand, generally accrues at the time of the breach, regardless of whether any damage is apparent or whether the injured party is aware of its right to sue. *Niles v. Louis H. Rapoport & Sons, Inc.,* 53 Cal.App.2d 644, 128 P.2d 50 (1942).

However, California Courts have applied the "discovery" rule to contract actions involving fraud or misrepresentation, and

the general trend is to apply the discovery rule "where it is manifestly unjust to deprive plaintiffs of a cause of action before they are aware that they have been injured." *Leaf v. City of San Mateo,* 104 Cal.App.3d 398, 406, 163 Cal.Rptr. 711 (1980).

In *April Enterprises, supra,* the California Court of Appeals applied the discovery rule to a breach of contract case which did not directly involve fraud or misrepresentation. The court held that because the alleged breach of contract was committed in secret and the harm flowing from the breach could not be reasonably discovered until a future time, the discovery rule should be applied despite the traditional rule of immediate accrual in contract cases. *April Enterprises, Inc.,* 147 Cal.App.3d at 832, 195 Cal.Rptr. 421. The court noted that "a common thread seems to run through all types of actions where the courts have applied the discovery rule. The injury or the act causing the injury, or both, have been difficult to detect.... Thus, there is an underlying notion that plaintiffs should not suffer where circumstances prevent them from knowing that they have been harmed." *Id.*

■ This case more closely resembles the type of action contemplated in *April Enterprises* than a typical contract action where, because of the nature of the contracted for performance, any breach of the contract would be immediately apparent.

The contractual agreement which plaintiff is suing on required defendants not to *make use of* certain trade secrets obtained during defendants' employment at Intermedics. Any breach of that contract would likely occur covertly, and there is no reason to expect that the wrongdoing would be perceived or discoverable by plaintiff at the time the breach began occurring. In sum, we are persuaded that the principles described in *April Enterprises* should apply to this case.

■ Thus, as in the preceding section, where we discussed plaintiff's misappropriation of trade secrets claims, we must determine (according to the applicable standard) whether defendants have shown that

plaintiff in fact discovered, or reasonably should have discovered, defendants' alleged breach of either the fiduciary relationship or the contractual agreements outside the applicable statutory periods.

Defendants argue here, as they did with respect to the claims based on misappropriation of trade secrets, that "objective evidence that Intermedics believed that defendants' had breached their contracts and fiduciary duties is found in the pleadings of the 1985 lawsuit against defendants." Defendants' motion to dismiss, filed on March 12, 1991, at 8. For the reasons we set forth above, we are not persuaded that either the act of filing the 1985 action, or the specific allegations in it, compel the conclusion that plaintiff then knew in fact, or should have known, about the *specific acts* on which suit is based here. Defendants have failed to persuade us that there is anything inherently implausible about plaintiff's contention that it was not until 1989 that it in fact discovered, and could have discovered, the acts by defendants that allegedly constitute breaches of the duties pled in these causes of action.

Plaintiff's claims of unfair competition, conspiracy, and inducement to breach contractual relations are tied to the misappropriation and breach of contract claims. For the reasons set forth in the our accrual analysis regarding those counts, we similarly reject defendants' attacks, based on statutes of limitations, on plaintiff's causes of action sounding in unfair competition, conspiracy, and inducement to breach contractual relations. However, this denial of defendants' motion is conditioned on plaintiff filing an amended complaint setting forth separately for each cause of action a specific averment as to when the alleged wrongs were in fact discovered and when, reasonably, plaintiff could have discovered those wrongs.

V. Plaintiff's Alleged Failure to Identify the Property on Which Plaintiff Seeks to Impose a Constructive Trust.

■ Count XIX purports to state a claim for imposition of a constructive trust.

Defendants claim that count XIX is defective because it fails to identify an interest or a tangible property right which could be returned to it. Plaintiff has failed to plead, with any specificity, the "things" it wants covered by the proposed constructive trust. Accordingly, by *May 20, 1991*, plaintiff shall deliver to defendants a document which describes, with as much detail as is possible at this time, the items upon which plaintiff seeks imposition of a constructive trust. We expect the list to be as exhaustive as feasible under current circumstances. However, we recognize that plaintiff may not, at this early stage in the proceedings, be able to determine all of the individual items of its property that defendants may have wrongfully retained. Thus, if it turns out that, in good faith, some omission is made, and that omission can later be both justified and rectified without undue prejudice to defendants, the court will permit the new item to become the subject of plaintiff's proposed constructive trust.

## VI. The Trade Secret Misappropriation Claims Based on Material Published in 1980, 1981 and 1985.

Defendants argue that plaintiff cannot base a claim of misappropriation of trade secrets on matter that plaintiff disclosed in its '133, '502 and '523 patents. The theory supporting this contention is that after the information was published in the patent application process it lost its character as a trade secret.

Plaintiff has conceded that it cannot claim misappropriation of trade secrets disclosed in the '133 and '502 patents (issued in 1980 and 1981 respectively). Plaintiff makes no such blanket concession, however, with respect to the '523 patent, which issued on July 8, 1986. While plaintiff concedes that it cannot predicate misappropriation causes of action on misuse of matter disclosed in that patent that allegedly occurred after the date of the issuance of the patent, plaintiff insists that it should be permitted to press claims based on acts of misappropriation that occurred before that date. Given our prior ruling (on res judica-

ta grounds) that plaintiff cannot maintain a cause of action for misappropriation based on conduct occurring prior to April 10, 1986, there remains a very small window of time (between April 10, 1986 and July 8, 1986) with respect to which we cannot, at this juncture, prohibit plaintiff from attempting to prove that defendants misappropriated secrets subsequently disclosed in the '523 patent.

## VII. Legal Sufficiency of Plaintiff's Correction of Inventorship Claim

In count XVIII of the amended complaint, plaintiff seeks to correct the inventorship on U.S. patent 4,827,936. 35 U.S.C. § 256 provides that a court add or delete the name of an inventor on a patent "whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention ..."

Plaintiff alleges that the subject of the '936 patent, originally issued to defendants Sweeny and Pless (and outside adviser Roger Winkle), and subsequently assigned to Ventritex, "was discovered by individuals who were not the trio of Benjamin Pless, Michael Sweeny and Roger Winkle, and who were, at the time of the discovery, under an obligation and duty to assign all right, title and interest in the matter discovered to Intermedics."

Defendants' motion to dismiss this count because of plaintiff's failure to plead, affirmatively, that the alleged error was inadvertent (i.e., committed without intent to deceive) is DENIED. Instead, plaintiff may plead ignorance of whether the alleged error in inventorship was advertent or inadvertent. In the amended complaint that we have ordered plaintiff to file by May 20, 1991, plaintiff shall identify the person or persons whom plaintiff believes to have been the true inventor(s) and shall aver explicitly, if true, that plaintiff does not know whether the error was inadvertent or not. If plaintiff later discovers evidence that the named inventors are the correct inventors, or that the error in naming the inventors was made with deceptive

intent, plaintiff shall promptly withdraw this count.

See also 775 F.Supp. 1258.

VIII. Defendants' Motion for a More Definite Statement.

Defendants' motion for a more definite statement is DENIED except to the limited extent required in the preceding sections.

IT IS SO ORDERED.