**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 5 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RONALD E. CHASTEEN,

       Plaintiff,

  and

PACER INDUSTRIES, INC., a
Missouri corporation; INJECTION
RESEARCH SPECIALISTS, INC., a
Colorado corporation,

       Plaintiffs-Appellants,

v.

UNISIA JECS CORPORATION, a
Japanese corporation; SUZUKI
MOTOR CORPORATION, a Japanese
corporation; ARCTIC CAT, INC., a
Minnesota corporation; ARCTIC CAT
SALES, INC., a Minnesota
corporation,

       Defendants-Appellees.

No. 99-1020

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 97-Z-2606)

G. Stephen Long, Shughart, Thomson & Kilroy, P.C., Denver, Colorado, (Joseph W. Halpern and Stephen G. Masciocchi, Holland & Hart, LLP, Denver, Colorado; John H. Bernstein, Kutak, Rock, Denver, Colorado; William E. Quirk, Shughart, Thomson & Kilroy, P.C., Kansas City, Missouri, on the briefs), for Plaintiffs-Appellants.

Alan G. Carlson (J. Derek Vandenburgh on the brief), Merchant & Gould, P.C., Minneapolis, Minnesota; Roger P. Thomasch (Jon Bernhardt on the brief), Ballard, Spahr, Andrews & Ingersoll, Denver, Colorado; Barry L. Grossman (Brian P. Akers on the brief), Foley & Lardner, Milwaukee, Wisconsin; (David G. Palmer, Brian L. Duffy, Zevnik, Horton, Guibord, McGovern, Palmer & Fognani, L.L.P., Denver, Colorado; William A. Bianco, Davis, Graham & Stubbs, L.L.P., Denver, Colorado, on the brief), for Defendants-Appellees.

---

Before **MURPHY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **ROGERS**, District Judge[*]

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

In 1997, Injection Research Specialists, Inc. and Pacer Industries, Inc. (collectively, "Injection Research")[1] filed suit against Arctic Cat, Inc., Arctic Cat Sales, Inc. (collectively, "Arctic Cat"), Suzuki Motor Corp. ("Suzuki") and

---

[*]Honorable Richard D. Rogers, Sr. District Judge, United States District Court for the District of Kansas, sitting by designation.

[1]Ronald Chasteen was also a named plaintiff in the original complaint. The district court, however, ruled that Chasteen lacked standing to prosecute the suit. Chasteen has not appealed that ruling.

UNISIA JECS Corp. ("JECS") (collectively, the "Defendants"), claiming the Defendants committed trade secret misappropriation and fraud. Specifically, Injection Research alleged the Defendants stole its trade secrets and used them to develop an electronic fuel injection ("EFI") system for two-cycle snowmobile engines. The Defendants moved for summary judgment on both claims, contending Injection Research filed suit after the statutes of limitations had run. Applying a three-year statute of limitations to both the trade secrets and fraud claims pursuant to Colorado state law, the District Court for the District of Colorado granted the Defendants' motion and dismissed the suit as time-barred.

Injection Research now appeals the grant of summary judgment, asserting the following three arguments: (1) the district court erroneously concluded that Injection Research's misappropriation claim accrued more than three years before it filed suit; (2) even if Injection Research filed its misappropriation claim outside the limitations period, the Defendants' wrongful concealment of information equitably tolled the statute of limitations; and (3) the fraud claim should be governed by Minnesota's six-year statute of limitations, and thus, that claim was

timely filed.[2] This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**.

## II. BACKGROUND

With Injection Research financing, Ronald Chasteen invented a prototype EFI system for two-cycle engines, which are used in snowmobiles and other vehicles. The EFI system effectively replaces the carburetor in a two-cycle engine, increasing the engine's efficiency and allowing it to operate at an optimum level under variable atmospheric and temperature conditions. Injection Research obtained patents to protect numerous features of its EFI system.

In July 1987, Injection Research contacted Polaris Industries, L.P. ("Polaris"), a major snowmobile manufacturer, in an effort to sell its EFI system to Polaris. Over the next fifteen months, Injection Research worked with Polaris to develop a contractual relationship, which included sharing trade secrets with Polaris. In October 1988, Injection Research discovered that Polaris had hired Gerhardt Maier, a former Injection Research employee who had helped develop

---

[2]Injection Research contends Minnesota law should govern the statute of limitations for both its fraud and misappropriation of trade secrets claims. Because the statute of limitations for misappropriation of trade secrets is three years under both Minnesota and Colorado law, however, Injection Research does not challenge the district court's choice of law ruling as it relates to the misappropriation claim. *See* Minn. Stat. § 325C.06; Colo. Rev. Stat. § 7-74-107.

its EFI system, though Polaris insisted that Maier would merely assist in cultivating Polaris' interest in EFI and its relationship with Injection Research. In December, however, Polaris informed Injection Research that it had decided EFI technology was too costly and that it no longer was interested in pursuing EFI systems for its snowmobiles. Nonetheless, one year later Polaris began marketing and selling the industry's first EFI-equipped snowmobiles.

When its relationship with Polaris broke down, Injection Research contacted Arctic Cat, a major competitor of Polaris, to once again attempt to sell its EFI system to a snowmobile manufacturer. After Arctic Cat signed a confidentiality and non-disclosure agreement, Injection Research performed a number of field tests for Arctic Cat to demonstrate its EFI system and sold Arctic Cat three prototype EFI units. In the Fall of 1989, however, Arctic Cat informed Injection Research of its intention to collaborate with Suzuki and JECS, one of Suzuki's vendors, to independently develop its own EFI system. In December 1991, Arctic Cat began marketing a snowmobile with an EFI system, and its advertisements boasted that Arctic Cat and its suppliers had developed the system on their own.

In 1990, Injection Research brought suit (the "Polaris action") against Polaris. Injection Research amended its complaint in late 1991 to add as defendants Fuji Heavy Industries, Ltd. ("Fuji"), Polaris' engine supplier, and

JECS, which manufactured the EFI system used in the Polaris/Fuji snowmobile engines. Injection Research asserted claims for, *inter alia*, trade secret misappropriation by Polaris and Fuji and patent infringement by Polaris, Fuji, and JECS. The amended complaint alleged a "conspiratorial scheme" between Polaris, Fuji, and JECS to manufacture "an EFI system which is saturated with [Injection Research] . . . confidential and proprietary information." In the Polaris action, JECS answered Injection Research's interrogatories, claiming it had based the EFI system it developed for Fuji/Polaris on prior design work it had undertaken on behalf of another company. Documents which JECS produced in the Polaris action in 1995, however, indicated to Injection Research that JECS did not independently develop its EFI system, but rather relied on the work done and approach adopted by Injection Research. Ultimately, Injection Research prevailed on its trade secret claim, though the patent infringement claims, the only claims then made against JECS, were dismissed.

On December 12, 1997, Injection Research filed the instant suit against Arctic Cat, Suzuki, and JECS, asserting against all the Defendants one misappropriation of trade secrets claim and one fraud claim. The district court granted the Defendants' motion for summary judgment on both claims, concluding they were time-barred pursuant to Colorado's three-year statute of

limitations for both misappropriation of trade secrets and fraud. Injection Research now appeals that ruling.

## III. DISCUSSION

### A. Standard of Review

This court reviews *de novo* a grant of summary judgment. *See Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material fact" is one which could have an impact on the outcome of the lawsuit, while a "genuine issue" of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In applying this standard, this court views the evidence and draws reasonable inferences therefrom in a light most favorable to the non-moving party. *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).

**B. Misappropriation of Trade Secrets**

"An action for misappropriation of a trade secret shall be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim." Col. Rev. Stat. § 7-74-107. The statutory definition of "misappropriation" includes both disclosure and use of a trade secret in contravention of a duty to maintain its secrecy. *See id.* § 7-74-102(2)(b)(II). Injection Research filed the instant suit against the Defendants on December 12, 1997. If, therefore, Injection Research knew or should have discovered prior to December 12, 1994 that Arctic Cat, Suzuki, and JECS misappropriated its trade secrets, Injection Research filed its trade secrets misappropriation claim beyond the limitations period.

*1. Was the claim filed outside the limitations period?*

The Fall 1989 issue of *Snowmobiler's Race & Rally* magazine contained an article entitled "Fuel Injection Under Development at Arctic Cat." On November 2, 1989, that article was faxed to Injection Research. Ronald Chasteen admitted in his deposition testimony that in the article, a manager at Arctic Cat disclosed trade secrets belonging to Injection Research in violation of Arctic Cat's confidentiality agreement. In November 1989, therefore, more than six years before filing the instant lawsuit, Injection Research had actual knowledge that

Arctic Cat had misappropriated its trade secrets by disclosing them when it had a duty to maintain their secrecy. Even though in the instant suit Injection Research more directly complained of Arctic Cat's *use* of its trade secrets, rather than *disclosure* of them, the controlling statute of limitations states, "For purposes of this section, a continuing misappropriation constitutes a single claim." *Id.* at § 7-74-107.

In interpreting an identical statute of limitations provision in California's version of the Uniform Trade Secrets Act ("UTSA"), the Ninth Circuit similarly held that the statute of limitations begins to run once a plaintiff learns a defendant improperly disclosed trade secrets, even though the defendant subsequently may also have unlawfully used those same trade secrets.[3] *See Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 523-24 (9th Cir. 1990). Furthermore, whether Chasteen or anyone else at Injection Research understood that the disclosures legally constituted a misappropriation of trade secrets is of no

---

[3]In *Ashton-Tate Corporation v. Ross*, the Ninth Circuit was interpreting the statute of limitations for trade secret misappropriation under California's version of the Uniform Trade Secrets Act ("UTSA"). *See* 916 F.2d 516, 523 (9th Cir. 1990). Although in the instant case this court is operating under Colorado law, Colorado has also adopted the UTSA and its version states, "This article shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among states enacting it." Colo. Rev. Stat. § 7-74-109. This court, therefore, has been encouraged by the Colorado legislature to rely on interpretations of other states' versions of the UTSA, such as the decision in *Ashton-Tate* and others discussed *infra*.

consequence, as long as Injection Research knew the facts which could give rise to such a claim. *Cf. Morris v. Geer*, 720 P.2d 994, 997 (Colo. App. 1986) ("What is critical in determining when a legal malpractice action accrues is knowledge of the facts essential to the cause of action, not knowledge of the legal theory upon which an action may be brought."). Because it is undisputed that Injection Research had actual knowledge Arctic Cat misappropriated its trade secrets more than six years before filing the instant suit, the district court properly ruled that Injection Research's misappropriation claim against Arctic Cat was filed outside the limitations period.

The disclosures in the magazine article, however, did not trigger the statute of limitations for Injection Research's misappropriation claim against Suzuki and JECS. This court must therefore determine whether other facts known to Injection Research before December 12, 1994 sufficiently placed it on notice that Suzuki and JECS also misappropriated its trade secrets. Injection Research contends the district court, in dismissing its trade secrets claim, incorrectly relied on the similarity between Arctic Cat's EFI system and that of Polaris, when the proper focus should have been on how Arctic Cat, Suzuki, and JECS developed its EFI system, what Injection Research knew of that development history, and when Injection Research acquired such knowledge. Because Injection Research's trade secrets claim would fail if indeed the Arctic Cat EFI system was

independently developed, as JECS and Arctic Cat purported, Injection Research argues that the statute of limitations on the trade secrets claim did not begin to run until it could disprove the possibility of such independent development, which it could not do more than three years before filing the instant suit. This court rejects that argument for two reasons: (1) Injection Research's proposed statute of limitations standard, which hinges on a plaintiff's ability to conclusively disprove the possibility of independent development, is overly lenient; and (2) any belief which Injection Research had that the JECS/Suzuki/Arctic Cat EFI system was independently developed was unreasonable and thus fails to create a material issue of fact.

Injection Research cites *Sokol Crystal Products, Inc. v. DSC Communications Corporation* for the proposition that mere suspicion of misappropriation does not trigger the statute of limitations. *See* 15 F.3d 1427, 1430 (7th Cir. 1994); *see also Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("*Intermedics I*") ("[S]uspicion and fear are not sufficient predicates for launching a lawsuit . . . ."). In *Sokol*, the plaintiff never discovered or produced evidence to directly demonstrate that the defendant used plaintiff's confidential information in developing a product; "[i]nstead, the jury inferred the misuse from the fact that [the defendant] had access to this information and from the similarity between Sokol's and [the defendant's]

products." 15 F.3d at 1429-30. The Seventh Circuit concluded, based on Sokol's lack of knowledge, that the statute of limitations did not begin to run until the defendant's product was sold on the market. *See id.* at 1430. Contrary to Injection Research's position, therefore, the lesson of *Sokol* is that the statute of limitations on trade secret misappropriation claims begins to run not when a plaintiff can positively and directly prove misappropriation rather than independent development, but simply when the plaintiff has knowledge of sufficient facts from which a reasonable jury could infer misappropriation.

A rule such as the one Injection Research proposes, under which a statute of limitations only begins running when a plaintiff can unassailably establish a legal claim for trade secret misappropriation, would effectively eviscerate the statute of limitations in all cases in which the plaintiff never discovers "smoking gun" evidence of misappropriation, but instead must rely on circumstantial and inferential evidence to prove misappropriation. The District Court for the Northern District of California recognized a further absurd consequence which would flow from Injection Research's proposed approach:

> [U]nder plaintiff's theory, a defendant could successfully invoke the statute of limitations only by proving, in trial, that at an earlier time, outside the limitations period, plaintiff would have established liability if it had litigated the matter to judgment. Defendant, in other words, would be required to litigate against herself the plaintiff's stale claim, introducing the evidence that plaintiff would have introduced in the hypothetical earlier litigation, then introducing the evidence that she as defendant would have

-12-

presented, and then asking the jury to find that she (as defendant) would have lost.

*Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 641 (N.D. Cal. 1993) ("*Intermedics II*"). In determining the timeliness of Injection Research's filing of its misappropriation claim against Suzuki and JECS, therefore, this court must resolve whether the undisputed material facts demonstrate that prior to December 12, 1994 Injection Research had knowledge of sufficient facts from which a reasonable jury could infer JECS and Suzuki had misappropriated Injection Research trade secrets. If, however, a genuine issue of material fact exists on this question, summary judgment must be denied.

In October and November of 1989, Injection Research learned that Arctic Cat had decided to work with Suzuki and JECS to independently develop an EFI system, instead of continuing its collaboration with Injection Research toward that goal. An internal Injection Research memorandum written by Chasteen in March of 1990 states that he then knew the EFI system JECS was developing for Suzuki/Arctic Cat was "identical" to the one it had developed for Fuji/Polaris. Moreover, the amended complaint which Injection Research filed in the Polaris action in October 1991 accused JECS of involvement in a "conspiratorial scheme" with Polaris and Fuji "to misappropriate a unique and proprietary . . . EFI system . . . for two cycle engines developed by . . . [Injection Research] . . . ." Thus, by late 1991, Injection Research believed JECS had participated in

-13-

misappropriating its trade secrets to develop the Polaris/Fuji EFI system and was presently developing an "identical" EFI system for Arctic Cat/Suzuki. From these undisputed facts, any reasonable jury would conclude that Injection Research knew or should have discovered over six years prior to filing the instant suit that JECS and Suzuki had misappropriated its trade secrets. Additionally, Injection Research actually purchased and inspected an Arctic Cat EFI-equipped snowmobile in late 1992 or early 1993, still well over three years before filing the instant suit, giving a jury further reason to find Injection Research either knew or should have discovered the alleged misappropriation prior to December 12, 1994.

Injection Research argues that a genuine issue of material fact exists as to whether it knew or should have discovered the purported misappropriation, because throughout the Polaris litigation, JECS claimed it independently developed the EFI system for Polaris. JECS's claim of independent development during the Polaris action, however, fails to create a genuine issue of material fact; no reasonable jury could find Injection Research believed such a claim, as it would neither have filed a misappropriation of trade secrets claim against Polaris and Fuji nor alleged that JECS was part of a conspiracy to misappropriate its trade secrets if it in fact believed JECS's claim. Injection Research similarly contends Arctic Cat's claim that it independently developed an EFI system with

Suzuki and JECS apart from JECS's work with Polaris and Fuji was credible, because Injection Research spent less time with and disclosed less information to Arctic Cat, because Arctic Cat did not market its EFI system until two years after Polaris, and because it would be unreasonable to assume JECS would share the proprietary information of one customer, Polaris, with its competitor, Arctic Cat. Injection Research argues that the credibility of Arctic Cat's independent development claim also generates a genuine issue of material fact about whether it knew about or should have discovered the alleged misappropriation before December 12, 1994. Again, however, Injection Research's contention that Arctic Cat's claim of independent development was credible collapses under the weight of logic. It is irrational to believe that JECS participated in the misappropriation of nearly thirty specific trade secrets to help design an EFI system for Polaris but somehow developed an identical system containing the exact same trade secrets for Suzuki and Arctic Cat without considering or utilizing the proprietary information it gained while collaborating with Polaris. In short, if Injection Research did in fact believe that JECS and Suzuki independently developed an EFI system for Arctic Cat snowmobiles, such a belief was illogical and unreasonable given the information Injection Research possessed about JECS's involvement with Fuji and Polaris. No reasonable jury could conclude, therefore, that because Injection Research may have irrationally believed in the possibility

of independent development by JECS, Suzuki, and Arctic Cat, it neither knew about nor should have discovered the alleged misappropriation.

Finally, the instant case is distinguishable from *Intermedics I*, in which a district court refused to grant the defendant summary judgment on statute of limitations grounds because although prior to the limitations period the plaintiff both knew the defendant possessed its trade secrets and suspected that the defendants *would use* its trade secrets to develop a product, the statute did not begin to run until certain information about the product was published indicating the defendant *had used* plaintiff's trade secrets. *See Intermedics I*, 775 F. Supp. at 1265-66. As the facts outlined above demonstrate, unlike in *Intermedics I*, Injection Research had good reason to know prior to the limitations period that JECS, Suzuki, and Arctic Cat had already used its trade secrets to develop an EFI system. Moreover, Injection Research's situation differs from that of the plaintiff in *Intermedics I* because Injection Research's contention that it had no reason to believe its trade secrets had been used to develop the Arctic Cat EFI system is "inherently implausible." *Id.* at 1266.

In sum, as early as October 1991, Injection Research had knowledge of sufficient facts from which a reasonable jury could infer that JECS and Suzuki had misappropriated Injection Research trade secrets to develop an EFI system for use in Arctic Cat snowmobiles. The district court therefore properly ruled

that Injection Research had filed its misappropriation of trade secrets claim against JECS and Suzuki beyond the three-year statute of limitations. The misappropriation claim against Arctic Cat was also filed outside the limitations period because Injection Research had actual knowledge in November 1989 that Arctic Cat improperly disclosed Injection Research trade secrets.

*2. Was Injection Research's misappropriation claim equitably tolled?[4]*

Injection Research alternatively argues the district court erred in dismissing the case as time-barred because genuine issues of material fact exist as to whether the Defendants' concealment of information equitably tolled the statute of limitations until 1997. Specifically, Injection Research asserts that Arctic Cat assured Injection Research it had not breached their confidentiality agreement, that JECS continually claimed it had independently developed its EFI system, and that JECS delayed production of documents which Injection Research sought in the Polaris action from 1991 until 1997. Based on these alleged acts of concealment by JECS and Arctic Cat, Injection Research argues genuine issues of material fact exist as to whether the statute of limitations for its misappropriation claim was tolled until 1997 when it finally obtained from JECS

---

[4]Injection Research raises an equitable tolling argument only with respect to its misappropriation claim.

the discovery documents indicating the JECS/Suzuki/Arctic Cat EFI system was developed by using Injection Research trade secrets.

The Colorado Supreme Court has adopted the doctrine of equitable tolling of the statute of limitations "where the defendant's wrongful conduct prevented the plaintiff from asserting his or her claims in a timely manner." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996). Injection Research has alleged no wrongful conduct committed by defendant Suzuki which may have prevented Injection Research from timely filing its misappropriation claim against Suzuki. Because "[t]he principle underlying equitable tolling [for wrongful concealment] is that a person should not be permitted to benefit from *his or her own* wrongdoing," Injection Research's failure to file its misappropriation claim against Suzuki within the limitations period cannot be saved under the doctrine of equitable tolling absent evidence that Suzuki itself wrongly concealed information. *Id.* at 1096-97 (emphasis added).

As to defendant Arctic Cat, we concluded that the statute of limitations for Injection Research's misappropriation claim against Arctic Cat began to run when Injection Research learned in November 1989 that Arctic Cat had disclosed trade secrets in a magazine article in violation of a confidentiality agreement. In support of its equitable tolling argument, Injection Research has alleged only that Arctic Cat concealed its *use* of Injection Research trade secrets but not that

-18-

Arctic Cat ever concealed its improper *disclosure* of those secrets. Because Injection Research does not assert that Arctic Cat concealed the very act which triggered the statute of limitations on the misappropriation claim against Arctic Cat, there is no genuine issue of material fact regarding equitable tolling on that claim.

Finally, this court must determine whether a genuine issue of material fact exists regarding JECS's purported concealment of information. Because we concluded that the statute of limitations began to run on Injection Research's misappropriation of trade secrets claim against JECS when the amended complaint was filed in the Polaris action in October 1991, Injection Research must produce evidence showing that JECS improperly concealed information about the claim prior to October 1994 when the statute would have expired. JECS's general assertion that it independently developed an EFI system cannot constitute the basis for equitably tolling the statute of limitations. The mere denial of liability, which is what an assertion of independent development amounts to in the face of a trade secret misappropriation claim, is not "wrongful conduct" which implicates the doctrine of equitable tolling. *Id.* at 1096. To hold otherwise would place defendants in the untenable position of either admitting liability or foregoing a statute of limitations defense.

However, JECS's failure to produce documents regarding the development history of its EFI system, which Injection Research sought to discover in the Polaris litigation, could potentially require the equitable tolling of the limitations period. "Equity will toll a statute of limitations if a party fails to disclose information that he is *legally required to reveal* and the other party is prejudiced thereby." *Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850, 855 (Colo. 1992) (emphasis added). Unfortunately, Injection Research has failed to include in the record on appeal evidence from which this court can determine that, prior to September 1995, when the district court actually ordered JECS's compliance with Injection Research discovery requests, JECS had a legal duty to supply the discovery documents. Aside from its own discovery request and the documents ultimately produced, Injection Research has not included in the appellate record any of the motions filed by the parties in the Polaris action or stays issued by the court between 1991 and September 1995 or even the September 1995 order to compel itself. Without knowing what the parties' motions entailed and their effect on pending discovery requests or the nature of the district court's stays, this court has no way to ascertain whether JECS was under a legal obligation to produce the documents before the September 1995 order.[5] "If the appellant

---

[5]As mentioned above, the Colorado Supreme Court stated in *Garrett v. Arrowhead Improvement Association* that "[e]quity will toll a statute of limitations if a party fails to disclose information that he is *legally required to*

-20-

intends to urge on appeal a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion." Fed. R. App. P. 10(b)(2); *see also* 10th Cir. R. 30.1(A)(1) ("The appellant must file an appendix sufficient for considering and deciding the issues on appeal.") Because Injection Research has failed to provide this court with a sufficient record to determine the appropriateness of summary judgment on the issue of whether, prior to October 1994, JECS withheld discovery documents which it was legally required to produce, we cannot employ the doctrine of equitable tolling to disturb the district court's judgment that Injection Research's misappropriation of trade secrets claim against JECS was time-barred. *See Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1474 (10th Cir. 1997) (stating that if "the appellant's appendix is insufficient to permit assessment of [a] claim of error, we must affirm"). We

---

*reveal* and the other party is prejudiced thereby." 826 P.2d 850, 855 (Colo. 1992) (emphasis added). In *First Interstate Bank v. Piper Aircraft Corporation*, however, the Colorado Supreme Court established a slightly different standard for equitably tolling a statute of limitations because of a defendant's fraudulent concealment. *See* 744 P.2d 1197, 1200 (Colo. 1987). The *First Interstate* test requires a plaintiff to show, *inter alia*, "the concealment of a material existing fact that *in equity and good conscience should be disclosed.*" *Id.* (emphasis added). Even if this court attempted to apply the slightly more lenient disclosure standard of *First Interstate*, the appellate record would still be insufficient for our task, because without a clearer understanding of the proceedings in the Polaris action, this court cannot decide whether JECS should have produced the discovery documents "in equity and good conscience."

therefore conclude the district court properly dismissed Injection Research's misappropriation claim against the Defendants for its failure to file the claim within the three-year statute of limitations period.

## C. Fraud

Injection Research contends that the district court erroneously applied Colorado's three-year statute of limitations to its fraud claim, when Minnesota's six year limitation period should govern. Because we concluded that Injection Research's misappropriation of trade secrets claim against all three defendants accrued more than six years before it filed suit and because Injection Research bases its fraud claim on the same conduct as it does its misappropriation claim, the district court's choice of law on the proper statute of limitations for fraud is irrelevant. Injection Research's fraud claim was filed outside the limitations period established in either Minnesota or Colorado.

## IV. CONCLUSION

For the foregoing reasons, this court concludes the district court properly ruled Injection Research's claims for misappropriation of trade secrets and fraud against all the Defendants were filed after the statutes of limitations had expired.

Therefore, we hereby **AFFIRM** the judgment of the District Court for the District of Colorado.