**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| FLEXWAGE SOLUTIONS LLC, a Delaware Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CERIDIAN HCM HOLDING INC., a Delaware Corporation, and CERIDIAN HCM, INC., a Delaware Corporation, | ) ) ) ) | C.A. No. N23C-04-086 EMD CCLD |
| Defendants. | ) ) ) | |

Submitted: February 5, 2024
Decided: May 13, 2024

*Upon Defendants' Partial Motion to Dismiss*
**GRANTED**

David A. Jenkins, Esquire, Julie M. O'Dell, Esquire, Smith Katzenstein & Jenkins LLP, Wilmington, Delaware, Jonathan K. Waldrop, Esquire, Marcus Barber, Esquire, Kasowitz Benson Torres LLP, Redwood Shores, California, Carolina Diaz-Martinez, Esquire, Kasowitz Benson Torres LLP, New York, New York. *Attorneys for Plaintiff FlexWage Solutions LLC*.

John A. Sensing, Esquire, P. Andrew Smith, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Bambo Obaro, Esquire, Weil, Gotshal & Manges LLP, Redwood Shores, California, David J. Lender, Weil, Gotshal & Manges LLP, New York, New York. *Attorneys for Defendants Ceridian HCM Holding Inc. and Ceridian HCM, Inc.*

**DAVIS, J.**

## I.     INTRODUCTION

This is a breach of contract and misappropriation of trade secrets action assigned to the Complex Commercial Litigation Division of the Court. Plaintiff FlexWage Solutions LLC ("FlexWage") alleges that Defendants Ceridian HCM Holding Inc. ("Ceridian Holding") and Ceridian HCM, Inc. ("Ceridian HCM" and, together with Ceridian Holding, "Ceridian") misappropriated FlexWage's trade secrets and, in doing so, breached two successive non-

disclosure agreements.[1]  Ceridian has moved to dismiss (the "Motion") almost all of FlexWage's claims.

For the reasons stated below, the Motion is **GRANTED**.

## II.    RELEVANT FACTS[2]

### A. THE PARTIES

FlexWage is a Delaware limited liability company headquartered in Arizona.[3]  FlexWage is a "financial technology" company founded in 2009.[4]

Ceridian Holding is a Delaware corporation headquartered in Minnesota.[5]  Ceridian HCM is likewise a Delaware corporation headquartered in Minnesota.[6]  Ceridian HCM is Ceridian Holding's subsidiary.[7]  Ceridian HCM is a "human capital management" company that, among other things, helps facilitate payroll.[8]  In 2012, Ceridian acquired "Dayforce," a payroll application that accounts for the bulk of Ceridian's revenue.[9]

### B. FLEXWAGE'S PRODUCT

The core of FlexWage's principal business is the "On-Demand Pay Solution."[10]  The On-Demand Pay Solution product "enables employees to access wages they have earned before their regular paydays, helping them avoid costly overdraft fees and high-interest short-term loans."[11]

---

[1]  FlexWage's Amended Complaint had also included claims of unfair competition and tortious interference with prospective business advantage, but FlexWage confirmed at oral argument that it will withdraw those common-law alternatives to its misappropriation claim.  Accordingly, the Court will not address those claims.

[2]  The following facts are derived from the well-pled allegations in FlexWage's Amended Complaint.  D.I. No. 14 ("Am. Compl.").  These allegations are presumed to be true solely for purposes of this Motion.

[3]  *Id.* ¶ 21.

[4]  *Id.* ¶¶ 26-27.

[5]  *Id.* ¶ 22.

[6]  *Id.* ¶ 23.

[7]  D.I. No. 19, Defendants' Opening Brief in Support of their Partial Motion to Dismiss (hereinafter "Defs.' Mot.") at 12; D.I. No. 22, Plaintiff's Opposition to Defendants' Partial Motion to Dismiss (hereinafter "Pl.'s Opp'n") at 4.  This fact was not specifically referenced in the Amended Complaint.

[8]  Am. Compl. ¶ 46.

[9]  *Id.*

[10]  *Id.* ¶ 26.

[11]  *Id.*

2

FlexWage and its founder, Frank Dombroski, spent several years and millions of dollars developing the On-Demand Pay Solution.[12] The On-Demand Pay Solution is also the core of this dispute.

FlexWage claims it "was the first company to commercialize earned wage access [("EWA")] technology, creating the EWA market and then spending years promoting the payment solution."[13] In addition to maintaining distinct trade secrets,[14] FlexWage filed for a patent in 2010 and eventually received US Patent No. 8,751,338 B2 for its EWA computer program.[15]

## C. THE PARTIES' INITIAL DISCUSSIONS

Mr. Dombroski pitched the On-Demand Pay Solution to Ceridian after connecting with a Ceridian employee at a trade show in 2013.[16] Mr. Dombroski and a Ceridian representative, Raymond Olson,[17] executed a mutual non-disclosure agreement on March 8, 2013 (the "2013 MNDA").[18] With the 2013 MNDA in place, FlexWage and Ceridian began discussing how Ceridian could implement FlexWage's EWA technology.[19] Those discussions included proposed license arrangements and involved the disclosure of FlexWage's confidential information.[20] The talks ultimately did not result in a transaction, as Ceridian backed out in early 2015.[21]

---

[12] *Id.* ¶¶ 27-33.
[13] *Id.* ¶ 33.
[14] *Id.* ¶¶ 40, 45.
[15] *Id.* ¶ 39.
[16] *Id.* ¶¶ 50-51.
[17] Mr. Olson signed the 2013 MNDA on behalf of "Ceridian Benefits Services, Inc." Defs.' Mot., Ex. A (hereinafter "2013 MNDA"). "Ceridian Benefits Services LLC" eventually merged into Ceridian HCM. Defs.' Mot., Ex. C. Which entity ultimately assumed the obligations under the 2013 MNDA has no bearing on the resolution of this matter because FlexWage's claims under the 2013 MNDA are untimely.
[18] Am. Compl. ¶ 52.
[19] *Id.* ¶¶ 54-60.
[20] *Id.* ¶¶ 57-60.
[21] *Id.* ¶ 62.

In June 2018, Ceridian resurrected the talks by reaching out to FlexWage.[22] Ceridian sought an EWA vendor for its Dayforce program.[23] The 2013 MNDA had expired in March 2018.[24] As such, FlexWage and Ceridian entered a new mutual non-disclosure agreement on July 18, 2018 (the "2018 MNDA")[25] Thereafter, FlexWage shared purportedly confidential knowledge with Ceridian.[26] FlexWage allegedly disclosed, among other things,

> detailed descriptions of its proprietary [EWA] payment solution and how it worked in order to educate Ceridian on the innovative nature of the technology, its capabilities, and the multi-faceted benefits to employees and employers. FlexWage also disclosed the steps for implementation of the system, best practices, and the rationale behind FlexWage's design decisions. For example, FlexWage explained to Ceridian the importance of distributing EWA payments to employees via a Ceridian sponsored debit card (1) to make EWA payments immediately available to the employee, (2) to securely track EWA payments, and (3) to allow Ceridian to accrue incremental revenue from interchange fees to merchants and account transfer fees to employees.[27]

During these talks, Ceridian employees allegedly asked "rudimentary questions regarding payroll function, constraints, and data, showing a complete lack of understanding regarding [EWA] technology and processes required for its implementation."[28] Ceridian employees also inquired about how FlexWage developed its EWA solution and how Ceridian could "market and monetize EWA technology."[29]

### D. CERIDIAN'S PRESS RELEASE

On October 16, 2018, without any substantive deal in place with FlexWage, Ceridian publicly announced its planned EWA program—calling it "Dayforce On-Demand Pay."[30]

---

[22] *Id.* ¶ 63.
[23] *Id.*
[24] 2013 MNDA ¶ 4.
[25] Am. Compl. ¶ 65; Defs.' Mot., Ex. B (hereinafter "2018 MNDA").
[26] *Id.* ¶¶ 68-71.
[27] *Id.* ¶ 71.
[28] *Id.* ¶ 73.
[29] *Id.*
[30] *Id.* ¶¶ 74-76.

4

FlexWage's Amended Complaint describes the program Ceridian advertised that day as "identical to FlexWage's On-Demand Pay Solution."[31] FlexWage explains that the press release "even copied the terms and descriptions used by FlexWage to explain its product to Ceridian."[32]

FlexWage immediately saw the resemblance to its proprietary software and contacted Ceridian about FlexWage's role in the project.[33] On the day of the press release, Mr. Dombroski emailed his contact at Ceridian and said Ceridian's newly announced service "sounds strikingly like [FlexWage's] patented solution."[34] Mr. Dombroski emailed another Ceridian employee approximately two weeks later, saying Ceridian's EWA solution "looks to be a replica of our Patented On-Demand Pay."[35] Mr. Dombroski added that FlexWage was "hopeful that [Ceridian] is looking to engage with FlexWage on this solution."[36]

### E. THE PARTIES' SUBSEQUENT NEGOTIATIONS

FlexWage heard back from a Ceridian representative on April 24, 2019.[37] In the interim, Ceridian had announced new details regarding its EWA solution, "copying nearly verbatim FlexWage's description of its On-Demand Pay Solution's Flexible Rules."[38] FlexWage provided Ceridian with more information about the EWA industry, and Ceridian raised the possibility of it acquiring FlexWage at a virtual meeting on April 25, 2019.[39] FlexWage allegedly provided even more information to Ceridian at a conference in early May 2019, and Ceridian suggested purchasing FlexWage for $50 million.[40]

---

[31] *Id.* ¶ 74.
[32] *Id.*
[33] *Id.* ¶¶ 76-77.
[34] *Id.* ¶ 77.
[35] *Id.* ¶ 78.
[36] *Id.*
[37] *Id.* ¶ 82.
[38] *Id.* ¶ 81.
[39] *Id.* ¶ 83.
[40] *Id.* ¶¶ 84-86.

Shortly after that conference, FlexWage sent Ceridian a document that valued FlexWage at "$150-250 million."[41] In response, Ceridian shifted the talks from an acquisition to a license agreement negotiation.[42] The negotiations continued until Ceridian stopped responding to FlexWage after a meeting on June 14, 2019.[43]

On June 19, 2019, Ceridian made another announcement touting its EWA solution.[44] FlexWage continued to try to contact Ceridian but received no response.[45] Despite FlexWage's inquiries going unanswered, FlexWage claims it "still believed that it would be the vendor to offer [EWA] through Dayforce, and understood the delay to be attributable to a lack of urgency to implement the solution, rather than any deceptive practices on Ceridian's part."[46]

### F. CERIDIAN'S PRODUCT LAUNCH

In May 2020, Ceridian announced the upcoming release of a rebranded EWA solution, "Dayforce Wallet."[47] Dayforce Wallet was offered to Ceridian's existing clients by fall 2020.[48] One such client was a large cosmetics retailer, which terminated its negotiations with FlexWage in favor of Dayforce Wallet.[49] As Ceridian's earlier announcements had foreshadowed, Dayforce Wallet shared similarities with FlexWage's product and business model.[50]

In November 2020, Ceridian hosted a conference that was open to the public.[51] FlexWage employees attended that conference and, when Ceridian publicly demonstrated Dayforce Wallet, FlexWage claims it finally realized Ceridian misappropriated FlexWage's trade

---

[41] *Id.* ¶ 88.
[42] *Id.* ¶ 89.
[43] *Id.* ¶¶ 90-93.
[44] *Id.* ¶ 94.
[45] *Id.*
[46] *Id.* ¶ 95.
[47] *Id.* ¶ 97.
[48] *Id.* ¶¶ 97, 100.
[49] *Id.* ¶ 99.
[50] *Id.* ¶ 100.
[51] *Id.* ¶ 101.

secrets.[52]  Dayforce Wallet went on to be a commercial success, earning Ceridian industry accolades and millions of dollars.[53]

### G. CURRENT LITIGATION

FlexWage initiated this action with its Complaint on April 10, 2023.[54]  Ceridian moved to dismiss the Complaint on June 8, 2023.[55]  Following full briefing of that motion, FlexWage amended its compliant on September 12, 2023.[56]  The Amended Complaint states four causes of action: (i) misappropriation of trade secrets (Count I); (ii) breach of contract (Count II); (iii) unfair competition (Count III); and (iv) tortious interference with prospective business advantage (Count IV).[57]

Ceridian filed the Motion seeking to partially dismiss the Amended Complaint on September 29, 2023.[58]  FlexWage opposed the Motion on October 30, 2023.[59]  Ceridian filed its reply on November 14, 2023.[60]  The Court heard argument on February 5, 2024.[61]

### III.    PARTIES' CONTENTIONS

### A. MOTION

The Motion challenges almost all of FlexWage's Amended Complaint.  The only claim not at issue in this Motion is FlexWage's claim that Ceridian HCM breached the 2018 MNDA.

---

[52]  *Id.* ¶ 102.
[53]  *Id.* ¶¶ 103-07.
[54]  D.I. No. 1, Complaint.
[55]  D.I. No. 6, Defendants' First Motion to Dismiss.
[56]  Am. Compl.
[57]  *Id.* ¶¶ 118-76.  As noted, FlexWage has ceased pursuit of Counts III and IV.  *See supra* note 1.
[58]  Defs.' Mot.
[59]  Pl.'s Opp'n.
[60]  D.I. No. 23, Defendants' Reply Brief in Support of their Partial Motion to Dismiss (hereinafter "Defs.' Reply").
[61]  D.I. No. 24.

Ceridian argues that FlexWage's misappropriation claim under Delaware's Uniform Trade Secret Act ("DUTSA")[62] is outside that law's three-year statute of limitations.[63] Ceridian asserts that FlexWage was put on inquiry notice of the alleged misappropriation by Ceridian's EWA-related announcements, including the April 2019 announcement that "cop[ied] nearly verbatim FlexWage's description of its On-Demand Pay Solution's Flexible Rules."[64] Ceridian adds that FlexWage's belief that FlexWage would eventually become Ceridian's vendor—an idea that was supposedly not extinguished until November 2020—did not toll the statute of limitations.[65] Ceridian maintains that negotiations do not toll the statutory clock in the absence of an agreement, and that FlexWage's subjective belief is irrelevant under the objective test used with 6 *Del. C.* § 2006.[66]

Ceridian next contends that FlexWage's misappropriation claims are too vague.[67] Specifically, Ceridian claims FlexWage has not identified precisely what trade secrets Ceridian supposedly misappropriated.[68] Ceridian argues that without such specificity, Ceridian does not have reasonable notice as to what must be defended.[69]

Ceridian also challenges FlexWage's breach of contract count on two grounds. First, Ceridian maintains that any claims under the 2013 MNDA are time-barred because FlexWage did not bring its claims until five years after the 2013 MNDA terminated.[70] Ceridian separately argues that the claims against Ceridian Holding under both the 2013 MNDA and 2018 MNDA

---

[62] 6 *Del. C.* §§ 2001-09.
[63] Defs.' Mot. at 13-21 (citing 6 *Del. C.* § 2006).
[64] *Id.* at 14-17 (quoting Am. Compl. ¶ 81).
[65] *Id.* at 17-21.
[66] *Id.*
[67] *Id.* at 22-24.
[68] *Id.*
[69] *Id.*
[70] *Id.*

8

must be dismissed because Ceridian Holding was not a signatory to either agreement.[71] Ceridian argues that any benefit Ceridian Holding received from those contracts is too attenuated to oblige Ceridian Holding to their terms.[72][73]

In a now-moot argument, Ceridian said 6 *Del. C.* § 2007 preempted FlexWage's common-law claims because those claims were duplicative of the statutory remedy for misappropriation.[74]

### B. OPPOSITION

FlexWage opposes the Motion. FlexWage emphasizes that the Amended Complaint alleges that FlexWage did not have inquiry notice until November 2020.[75] FlexWage argues that this fact must be accepted at this stage.[76] FlexWage adds that the parties' continued negotiations demonstrate that FlexWage was not yet on inquiry notice, even if the negotiations did not toll the statute of limitation.[77] FlexWage has not argued for or alleged tolling.[78]

As for the degree of specificity required to state a trade secret claim, FlexWage presses Delaware's undemanding pleading standard and accuses Ceridian of attempting to improperly elevate that standard.[79] FlexWage also summarizes the facts in the Amended Complaint from which the elements of a trade secret can be derived.[80]

With respect to the breach of contract claim, FlexWage never defends the timeliness of its claims under the 2013 MNDA. FlexWage does argue that Ceridian Holding can be liable for

---

[71] *Id.* at 25-27.
[72] *Id.*
[73] *Id.* at 29-32.
[74] *Id.*
[75] Pl.'s Br. at 14-17.
[76] *Id.*
[77] *Id.* at 18-19.
[78] *Id.*
[79] *Id.* at 24.
[80] *Id.* at 19-24.

breach of the MNDAs[81] because Ceridian Holding accepted direct benefits from the MNDAs.[82] Specifically, FlexWages says that, through Ceridian HCM, Ceridian Holding obtained confidential information under the MNDAs and then used that information to make Dayforce Wallet.[83] According to FlexWage, that conduct binds Ceridian Holding to its subsidiary's contracts under either a theory of implicit adoption or equitable estoppel.[84]

FlexWage had argued that its common-law tort claims were sufficiently distinct from its DUTSA claim to avoid preemption, but FlexWage has since withdrawn that argument.[85]

## IV.    STANDARD OF REVIEW

Upon a motion to dismiss under Rule 12(b)(6), the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[86] The Court does not, however, accept "conclusory allegations that lack specific supporting factual allegations."[87] "The timeliness of claims may be determined on a motion to dismiss if the facts pled in the complaint, and the documents incorporated within the complaint, demonstrate that the claims are untimely."[88]

---

[81] FlexWage's brief discusses the 2013 MNDA as if it is a viable contract in this action but never addresses Ceridian's argument to the contrary. *Id.* at 25-30.

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.* at 30-34.

[86] *See ET Aggregator, LLC v. PFJE AssetCo Hldgs. LLC*, 2023 WL 8535181, at *6 (Del. Super. Dec. 8, 2023).

[87] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[88] *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *6 (Del. Ch. Jan. 24, 2005) (footnotes and citations omitted).

## V.   DISCUSSION

### A.  FLEXWAGE'S MISAPPROPRIATION CLAIM IS TIME-BARRED

Even drawing all reasonable inferences in favor of FlexWage, the Court cannot find that FlexWage's misappropriation claim accrued later than June 2019.[89]   Instead, the Court finds that it is most likely that this claim accrued in October 2018 when Ceridian publicly announced a product that seemingly copied FlexWage's contractually protected confidential information. Moreover, the Court notes that FlexWage gained more knowledge of such a with each new announcement by Ceridian.  By the time Ceridian cut off negotiations with FlexWage and then made a third announcement regarding its competing product in June 2019, FlexWage should have recognized Ceridian was engaged in misappropriation.

> As relevant here, misappropriation of a trade secret is defined as:
>
> Disclosure or use of a trade secret of another without express or implied consent by a person who . . . [a]t the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade [secret] was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use[.][90]

Under 6 *Del. C.* § 2006, "[a]n action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."  Pursuant to that rule, a putative plaintiff need only be aware of the factual predicate for its claim for the statutory period to commence.[91]  The plaintiff need not "realize that the use 'legally constituted a misappropriation of trade secrets.'"[92]  In other words, "[w]hen a party has

---

[89]  *See id.*
[90]  6 *Del. C.* § 2001(2)(b)(2)(B).
[91]  *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 2005 WL 1089027, at *13 (Del. Ch. May 4, 2005).
[92]  *Id.* (quoting *Chasteen v. Unizia Jecs Corp.*, 216 F.3d 1212, 1218 (10th Cir. 2000)).

'facts sufficient to make him suspicious, or that ought to make him suspicious,' the party is on inquiry notice."[93]

FlexWage's Amended Complaint demonstrates that FlexWage had sufficient reason to suspect misappropriation well before Ceridian's public demonstration of Dayforce Wallet in November 2020. FlexWage knew that confidential details about its business were disclosed in connection with the 2013 MNDA and the 2018 MNDA.[94] After those contractually protected disclosures, FlexWage learned that Ceridian announced a product that was "identical" to FlexWage's product and "even copied the terms and descriptions used by FlexWage to explain its product to Ceridian."[95] As early as October 2018, Mr. Dombroski described Ceridian's announced product as a "replica" of FlexWage's design.[96] At that time, FlexWage already recognized "striking[]" similarities to its own product and was "acutely aware that Ceridian had neither executed a licensing agreement over FlexWage's On-Demand Pay Solution, [n]or otherwise confirmed that Ceridian had selected FlexWage as the vendor to provide [EWA] to Dayforce."[97]

If Ceridian's misappropriation were not already apparent, Ceridian's April 2019 announcement "cop[ied] nearly verbatim FlexWage's description of its On-Demand Pay Solution's Flexible Rules."[98] Then, after talks between FlexWage and Ceridian ended in June 2019, Ceridian made yet another unilateral announcement regarding its EWA product.[99]

---

[93] *iBio, Inc. v. Fraunhofer-Gesellschaft zur Förderung der Angewandten Forschung E.V.*, 2018 WL 6493503, at *4 (Del. Ch. Dec. 10, 2018) (quoting *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 363845, at *7 (Del. Ch. Jan. 27, 2010)).
[94] *See, e.g.*, Am. Compl. ¶¶ 60, 69.
[95] *Id.* ¶ 74
[96] *Id.* ¶ 78.
[97] *Id.* ¶¶ 76-77.
[98] *Id.* ¶ 81.
[99] *Id.* ¶ 94.

The Amended Complaint's allegations contain the factual predicate for FlexWage's misappropriation claim. The MNDAs contractually obligated Ceridian to keep FlexWage's disclosures confidential. The announcements demonstrate that Ceridian was nevertheless using FlexWage's confidential information. That combination put FlexWage on, at least, inquiry notice of its misappropriation claim against Ceridian.

FlexWage alleges in its Amended Complaint that it "was not on inquiry notice of Ceridian's misappropriation of Plaintiff's Trade Secrets and Confidential Information in April 2019—or at any point prior to November or December 2020."[100] The Amended Complaint's late-2020 date is based on Ceridian's public demonstration of Dayforce Wallet.[101] As a starting point, the Court is not required to accept legal conclusions pled under the guise of factual allegations.[102] Thus, the Court is not bound by plaintiff-friendly Civil Rule 12(b)(6) standards to defer to FlexWage's suggestion as to when the claim accrued.

More substantively, FlexWage gives "use" too narrow a definition here. "Using" a trade secret is not limited to publicly displaying the fruits of the trade secret and offering it for sale; instead, in this context, "the term 'use' has been broadly defined as 'any exploitation of the trade secret that *is likely to* result in injury to the trade secret owner or enrichment to the defendant.'"[103] Ceridian's repeated announcements that purportedly took advantage of FlexWage's trade secrets fit that broad definition. As noted, a plaintiff need not know that certain facts legally constitute misappropriation for the statutory clock to start; the plaintiff need only be aware of the facts themselves.[104] Here, the allegations in the Amended Complaint lead

---

[100] *Id.* ¶ 80.
[101] *Id.* ¶¶ 101-02.
[102] *See MHS Cap. LLC v. Goggin*, 2018 WL 2149718, at *14 n.178 (Del. Ch. May 10, 2018) (quoting *Addy v. Piedmonte*, 2009 WL 707641, at *6 (Del. Ch. Mar. 18, 2009)).
[103] *Pascal Metrics, Inc. v. Health Catalyst, Inc.*, 2023 WL 3019665, at *6 (Del. Super. Apr. 19, 2023) (emphasis added) (quoting *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 909 (3d Cir. 2021)).
[104] *See VLIW Tech.*, 2005 WL 1089027, at *13.

to the conclusion that FlexWage knew facts that add up to misappropriation earlier than the public release of Dayforce Wallet.

In support, FlexWage relies on *Pascal Metrics, Inc. v. Health Catalyst, Inc.*[105] There, the Court found the plaintiff was not on inquiry notice where the plaintiff only "had knowledge of the development of a potentially competing product for future release."[106] The Court held that the plaintiff "needed at least to have knowledge of the potential future for damages."[107] But in *Pascal Metrics*, the plaintiff's only early warnings of misappropriation were that some of its former employees worked for its competitor and that a graphic on the competitor's website suggested the competitor might have been developing a competing product.[108] The Court found those signals only "raised mere suspicion and fear of competition."[109]

Here, in contrast, Ceridian made public announcements about a proposed product that recited FlexWage's purported trade secrets "nearly verbatim."[110] That should have been a "red flag" to FlexWage—something absent in *Pascal Metrics*.[111] Additionally, the fact that Ceridian actually announced plans to implement a copy-cat product gave FlexWage "knowledge of the *potential* future for damages," even before Ceridian finally released Dayforce Wallet.[112] Here, the Court sees clear warning signs of misappropriation where, in *Pascal Metrics*, there were only hints of misappropriation. That factual difference leads to a different result.

---

[105] Pl.'s Opp'n at 15-16.
[106] 2023 WL 3019665, at *3.
[107] *Id.*
[108] *Id.* at *2-3.
[109] *Id.* at *3.
[110] Am. Compl. ¶ 81.
[111] *See Pascal Metrics*, 2023 WL 3019665, at *2 (quoting *Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*, 2019 WL 6726836, at *8 (Del. Super. Dec. 4, 2019), *aff'd*, 247 A.3d 674 (Del. 2021)).
[112] *Id.* at *3 (emphasis added).

FlexWage's final argument—that Ceridian's off-and-on negotiations with FlexWage meant that Ceridian's use was not yet "improper"[113]—is not persuasive. First, this argument runs counter to the holding in *VLIW Tech., LLC v. Hewlett-Packard Co.* that "[t]he fact that the parties were engaged in negotiations to avoid the suit is not a proper ground for tolling the statute of limitations."[114] FlexWage argues the negotiations here are distinguishable because the negotiations were not "to avoid [a] suit."[115] The Court, however, finds that litigation would be—and, indeed, was—inevitable if Ceridian followed through on its announcements without reaching a deal with FlexWage.[116] In any event, the impropriety contemplated by the relevant portion of DUTSA is using or disclosing a trade secret "without express or implied consent,"[117] and the negotiations here hardly suggest that FlexWage impliedly consented to Ceridian publicly announcing FlexWage's secrets. Mr. Dombroski's emails insinuating an intellectual property violation in response to Ceridian's first press release supports that conclusion.[118]

The Court finds that the only reasonable inference to be drawn from the allegations in the Amended Complaint is that FlexWage knew or should have known the factual predicate for a misappropriation claim by June 2019 at the latest. FlexWage failed to act and hoped that Ceridian would eventually come around after years of fruitless negotiations. 6 *Del. C.* § 2006

---

[113] Pl.'s Opp'n at 16-19.

[114] 2005 WL 1089027, at *13.

[115] Pl.'s Opp'n at 19.

[116] The Court is not convinced that *VLIW Technology*'s observation was limited to explicit settlement negotiations as opposed to business negotiations that would resolve a budding dispute. Like here, the relevant negotiations in *VLIW Technology* were "negotiations to license the VLIW Technology to STM." 2005 WL 1089027, at *13. Also, later in the opinion, the Court of Chancery stated more generally, "negotiations do not toll the statute of limitations, unless the parties agree to do so." *Id.* at *15. Most importantly, the public policy concerns that support this rule—specifically, that it could cause would-be plaintiffs to unnecessarily prolong negotiations and would-be defendants to quickly end negotiations—seem to apply equally even where litigation has not yet been directly threatened. *See id.* at *13 n.54.

[117] 6 *Del. C.* § 2001(2)(b).

[118] *See* Am. Compl. ¶ 77 ("[W]e see the following announcement regarding your launch of a service that sounds strikingly like our patented solution. Should we re-connect to discuss our role in the service?"); *Id.* ¶ 78 ("This solution looks to be a replica of our Patented On-Demand Pay. We are hopeful that your team is looking to engage with FlexWage on this solution.").

requires more. Accordingly, the Court is constrained to dismiss FlexWage's misappropriation claim. The Court need not consider Ceridian's other challenges to Count I.

## B. FLEXWAGE'S BREACH OF CONTRACT CLAIMS UNDER THE 2013 MNDA AND AGAINST CERIDIAN HOLDING ARE DEFICIENT[119]

### i. The 2013 MNDA

The timeliness analysis with respect to the 2013 MNDA is less complex. A putative plaintiff has three years to bring an action for breach of contract.[120] "An action for breach of contract accrues at the time of the alleged breach of the contract."[121] "When a claim falls outside the limitations period on its face, 'the plaintiff bears the burden of pleading facts leading to a reasonable inference that a tolling exception applies.'"[122]

The 2013 MNDA terminated in March 2018.[123] FlexWage did not bring its claim until April 2023.[124] FlexWage makes no attempt to argue that the statute of limitations was tolled or to otherwise demonstrate that its claims under that contract are timely. That lack of response precludes FlexWage's continued pursuit of any claims under the 2013 MNDA.[125]

---

[119] The Court notes that, generally, motions to dismiss portions of a single count are disfavored. *See, e.g.*, *ET Aggregator*, 2023 WL 8535181, at *6-7. FlexWage, however, did not object to Ceridian's attempt to parse Count II of the Amended Complaint. Moreover, Ceridian's arguments here—*i.e.*, that a particular contract and a particular defendant should be completely excised from Count II—are more holistic than the arguments to dismiss individual "theories" within a count that have been rejected. *Id.* Accordingly, the Court will consider Ceridian's argument even though Ceridian does not seek to dismiss Count II in its entirety.

[120] 10 *Del. C.* § 8106(a).

[121] *VLIW Tech.*, 2005 WL 1089027, at *13 (citing *U.S. Cellular Inv. Co. v. Bell Atl. Mobile Sys., Inc.*, 677 A.2d 497, 503 (Del. 1996)).

[122] *Envolve Pharm. Sols., Inc. v. Rite Aid Headquarters Corp.*, 2023 WL 2547994, at *8 (Del. Super. Mar. 17, 2023) (quoting *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *21 (Del. Super. Aug. 16, 2021)).

[123] *See* 2013 MNDA ¶ 4.

[124] D.I. No. 1, Complaint.

[125] *See Jackson v. Coupe*, 2017 WL 3396494, at *2 (Del. Super. July 14, 2017) (holding the failure to respond to portions of a motion to dismiss constitutes abandonment of the undefended claims).

### ii. *Ceridian Holding*

Ceridian Holding did not sign the 2018 MNDA. FlexWage argues that Ceridian Holding can nonetheless be liable for breach of contract under the doctrines of implicit adoption and equitable estoppel.[126] The Court need not address how those doctrines might apply in this context because a requisite underlying fact is absent. Both of FlexWage's arguments depend on showing that Ceridian Holding accepted direct benefits under the MNDAs.[127] Despite that, FlexWage alleges no facts to suggest that Ceridian Holding, as opposed to its subsidiaries, directly benefitted from the MNDAs.

In its Amended Complaint, FlexWage conflates Ceridian Holding and Ceridian HCM.[128] The Amended Complaint does not make any substantive allegations that specifically identifies Ceridian Holding.[129] Conclusory allegations, such as claiming without support that Ceridian Holding directly benefitted from the MNDAs,[130] are insufficient to defeat a motion to dismiss.[131] FlexWage alleges no facts that create a reasonable inference that Ceridian Holding and Ceridian HCM disregarded their distinct corporate forms in the pursuit of Dayforce Wallet. Instead, FlexWage invites the Court to collapse Ceridian's corporate structure and assume that acts taken under a contract signed by Ceridian HCM are attributable to Ceridian HCM's parent. Delaware courts are unreceptive of such arguments.[132] In the absence of any specific allegations that

---

[126] Pl.'s Br. at 25-30.

[127] *See id.* at 26, 29.

[128] *See, e.g.*, Am. Compl. ¶ 47 ("The acts and omissions herein were performed by employees of Ceridian HCM Holding[] and/or Ceridian HCM on behalf of both Ceridian HCM Holding[] and Ceridian HCM and/or benefitted both Ceridian HCM Holding[] and/or Ceridian HCM.").

[129] *See Nestor v. Poore*, 2024 WL 326666, at *1 (Del. Ch. Jan. 29, 2024) ("'Although group pleading is not prohibited under Delaware law, it is generally disfavored.' Such disfavor supports dismissal when the group pleading leaves the defendants unable to discern the claims pled against them." (quoting *In re Swervepay Acquisition, LLC*, 2022 WL 3701723, at *9 (Del. Ch. Aug. 26, 2022))).

[130] *See* Am. Compl. ¶ 47.

[131] *See ET Aggregator*, 2023 WL 8535181, at *6 (quoting *Ramunno*, 705 A.2d at 1034).

[132] *See, e.g.*, *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *5 (Del. Ch. Nov. 13, 2018) (holding Delaware law "does not countenance" "disregard[ing] the separateness of parent and subsidiary simply because a plaintiff would prefer to hold both liable for the subsidiary's breach of contract").

17

Ceridian Holding accepted direct benefits of the MNDAs, there is no basis to bind Ceridian Holding to those contracts.

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion.

**IT IS SO ORDERED.**

May 13, 2024
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeExpress